THIRZA ANN FOLEY, PROSECUTRIX, v. HOME RUBBER COMPANY, RESPONDENT.

Submitted March 16, 1916—Decided January 11, 1917.

1. Where compensation is sought under section 2 of the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 136), the question of negligence does not enter into consideration, and it is not necessary that it be shown that the accident is one of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause.
2. An employe, in going to a European country on his employer's business, set sail, to the knowledge of his employer, on a vessel sailing under the flag of a country then at war. While on the voyage the vessel was sunk by an enemy submarine and the employe lost his life. *Held*, that the death of the employe arose from an extraordinary risk which might reasonably have been anticipated by the employer, and that death resulted from an accident arising out of and in the course of decedent's employment. The fact that the vessel was sunk by the designed act of a belligerent does not put the case on any different footing than if the employe had lost his life in any of the other various ways recognized as the dangers incident to travel.

---

On *certiorari*.

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutrix, *Fredk. W. Gnichtel.*

For the respondent, *Jess & Rogers.*

The opinion of the court was delivered by

KALISCH, J. The prosecutrix's husband, Arthur F. Foley, deceased, was in his lifetime in the employ of the respondent as a special traveling salesman and manager of its European trade. In the course of his employment it was necessary to visit the respondent's London office which was its European headquarters. The deceased engaged passage on the Lusitania, which steamship was listed to steam from the port of New York to Liverpool on May 1st, 1915, under the British flag. The steamer carried passengers and ordinary freight and some cartridges for war use. There was an American steamer scheduled to steam for a British port under the protection of the American flag on the same day that the Lusitania was due to leave, on which American steamer the deceased might have procured passage, so far as his duties or requirements of his employment were concerned. The respondent did not instruct the deceased on what particular steamer to make the journey, but knew of the fact that the deceased had engaged passage on the Lusitania and offered no objection. On the 7th day of May, 1915, while the Lusitania was within the zone or area which had theretofore been declared the war zone by the German government, she was attacked and torpedoed by a German submarine which caused the steamship to sink within a few minutes, and the death of the deceased was the result of the sinking of the steamship.

In the Court of Common Pleas of Mercer county, counsel for the respective parties stipulated in writing as to the facts as above related and it was on this stipulation that the trial judge made his findings and rule for judgment for the respondent.

The trial judge found that the deceased came to his death as a result of an accident in the course of his employment.

The finding made by the trial judge, which gives rise to the vital question under discussion and which is the turning

point of the case is as follows: "I find that the said accident did not arise out of the employment of the said deceased, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, and that the petition filed in the cause must be dismissed, but without costs to the petitioner."

Whether or not an accident arose out of an employment is invariably a mixed question of law and fact. It is well settled by the decisions of our courts that if there is any testimony to support the determination of fact it will not be reviewed.

Here, however, it is apparent that the determination of fact was founded upon a misconception by the trial judge of the legal principle applicable thereto, and therefore the legal propriety of such finding is reviewable.

The trial judge appears to have disposed of the facts involved in this case upon the mistaken notion that in order to hold a master responsible for an injury to his employe as the result of an accident, the accident must be one of which the actual or lawfully imputed negligence is the natural and proximate cause, whereas it is clear from a plain reading of the statute that the question of negligence does not enter into the consideration of the case at all, where compensation is sought, as in this case, under section 2 of the Workmen's Compensation act. *Pamph. L.* 1911, *p.* 136.

The legal principle which was applied by the trial judge to the facts of the present case is solely applicable to actions at law commenced under section 1 of the act above recited.

The question presented for our decision is whether the destruction of the Lusitania by a submarine and the death of the deceased in consequence was an accident arising out of the employment. The facts in this case are undisputed, and therefore the same situation in that respect is present as existed in *Walther, Executrix,* v. *American Paper Co.,* decided at the November term, 1916, of the Court of Errors and Appeals (*post p.* 732), where the court reviewed the finding of the Court of Common Pleas, affirmed by the Supreme Court in 98 *Atl. Rep.* 264, that the accident, established by the evidence, arose out of the employment, and reversed the judgment.

For the respondent it is contended that the accident did not arise out of the employment, in that the destruction of the Lusitania by being torpedoed was something that was not reasonably to have been anticipated. In *Hulley* v. *Moosbrugger*, 88 *N. J. L.* 161, the Court of Errors and Appeals decided that where an accident is the result of risk reasonably incident to the employment, it is an accident arising out of the employment. In that case it was held that skylarking among employes, whereby a co-employe who neither instigated nor took part in it was injured, was not a risk reasonably to be anticipated by the employer and therefore the injury was not the result of an accident arising out of the employment.

Following the rule laid down in that case it was held by this court, in *Schmoll* v. *Weisbrod & Hess Brewing Co.* (*ante p.* 150), where the agent and collector of the brewing company, while on his employer's business in a district of bad repute, was shot by some person unknown, that in the absence of any proof that the motive of the assailant was robbery or that the employer had notice or knowledge of the dangerous character of the locality, it could not properly be said that the shooting of the agent was an accident arising out of the employment. In *Walther* v. *American Paper Co.*, *supra*, the decedent was a night watchman in a mill and while engaged in such employment was struck down with a club and killed by his assailant who took from the vest pocket of the deceased $15. The assailant knew that the deceased had been paid his wages that day and went to the mill in the night time on purpose to rob the deceased. He made no attempt at any robbery from the office of the mill or any destruction of the mill property or any mischief or crime other than the robbery of Walther.

The Court of Errors and Appeals held that the death of the deceased was not the result of an accident arising out of his employment and that the case could not be distinguished from *Hulley* v. *Moosbrugger, supra*. From this it is plainly inferable that it was the view of the court that since the design of Walther's assailant was directed against Walther

personally and not against the property of the master, and therefore might have been carried out at any other time or place, it was an act so unrelated to the employment that it could not be reasonably said to be an accident arising out of the employment. We think the present case is clearly distinguishable from the cases cited. The agreed facts disclose that the Home Rubber Company knew that its agent was booked for a passage on the Lusitania; it knew that the Lusitania was a ship steaming under the flag of Great Britain, a nation at war with Germany; it knew (according to the stipulation) that a war zone had been declared by the German government in which all enemy ships would be liable to destruction by German naval forces, thus endangering the lives of passengers. The stipulation from which the inference of such knowledge of the respondent is drawn reads as follows: "That while the said steamship Lusitania was on its way across the Atlantic ocean and while passing the coast of Ireland, and in the zone of waters *theretofore publicly declared* by the German government to be a war zone, in which all enemy ships would be liable to destruction by German naval forces," &c.

But if it can be fairly said that the respondent had no notice of this declaration of the German government and was not therefore legally bound to take notice of it, nevertheless it was bound to take notice that a condition of war existed between Great Britain and Germany and that ships of the enemy were subject to be captured or destroyed by such warring nations. This was a danger reasonably to be apprehended. This danger attached itself to every traveler on an enemy ship, whether engaged in the pursuit of pleasure or in the course of his or her employment.

The extraordinary risk in the present case arose from the fact that Foley was on an enemy ship in the course of his employment. His employer knew of this risk. If the Lusitania had been lost through a collision, fire or storm at sea, resulting in the death of Foley, it would, under the principle enunciated in all the cases bearing on this subject, be held to have been an accident arising out of his employment.

Foley's presence on the ship was connected with the very employment in which he was engaged. The fact that the Lusitania was lost through none of the common perils of the sea, but by an extraordinary peril, does not make the extraordinary peril less a cause of accident arising out of Foley's employment. Both Foley and his employer were chargeable with knowledge of the perils of war upon the high seas. They must be assumed to have known that a belligerent vessel sailing under a belligerent flag, carrying contraband of war, subjected the vessel to attack by an enemy vessel, and that as a result of such attack, under many contingencies recognized by the law of nations, not only the loss of the vessel attacked, but the loss of lives of those upon her might result. The fact that the attack in this instance was not executed in a way that might have been anticipated, but in a manner said to be contrary to the law of nations, may operate to qualify the degree or nature of the danger and risk to such a peril, but does not eliminate the essential factor in the case that the voyage was one pregnant with risk which the employer must have contemplated as arising out of and in the course of the employment. Such appears to have been the reasoning in *Zabriskie v. Erie Railroad Co.,* 86 *N. J. L.* 266, holding that where the employe left the shop and crossed a danger zone of two railroad tracks of the main line of the Erie railroad, laid at grade, upon a much traveled public highway, in order to reach a toilet and was killed, that the danger and risk of the journey must have been within the contemplation of the employer. It becomes at once apparent that the fact whether or not the automobile which killed the employe was operated in a lawful manner or was lawfully upon the highway, was not regarded as an essential factor in the case.

In the present case if the Lusitania had struck a mine instead of being torpedoed, resulting in Foley's death, could it be reasonably contended that his death was not due to an accident arising out of his employment? We think not. It may be well said that those whose employments require them to travel by land or sea are known by their employers to be subject to the common perils that such traveling incurs. The

risk is inherent in the employment itself. The manner in which the accident is brought about is not at all of the essence of the matter, the vital question always being, was the accident connected with the employment? If it was, then it arose out of the employment, provided it occurred in the course of the employment.

Let us test the soundness of the proposition just stated. Suppose the Lusitania had not been torpedoed but captured, and in transferring the passengers to lifeboats, Foley lost his life; or after the passengers had been transferred to lifeboats a storm had arisen, sinking the lifeboat in which Foley was; could there be any doubt whatever that Foley would have been considered to have lost his life by an accident arising out of his employment. This is the underlying doctrine of *Zabriskie* v. *Erie Railroad Co., supra,* and *Terlecki* v. *Straus,* 85 *N. J. L.* 454; 86 *Id.* 708.

It is a matter of common knowledge that thousands of traveling salesmen travel daily in the course of their employment in cars propelled by steam, electricity and other propelling power, and therefore are subject to the risk of being injured or killed by reason of a collision or derailment; or by the cars going through an open draw or falling from a defective trestle, &c. The fact that the collision or derailment was caused by some malicious person with the design to injure a railroad company or some person in its employ, would not operate to make an injury received by a salesman traveling on the car collided with or derailed, any the less an injury, the result of an accident arising out of the employment of such salesmen, than if such injury had been received by him as a result of the cars going through an open draw or falling from a defective trestle.

It must be borne in mind that the denial of a right of compensation in the Walther case was put upon the ground that the design of the assailant was to rob Walther and not Walther's master, and hence the attack made on Walther was not connected with Walther's employment, and that the denial of compensation in the Schmoll case was rested upon the

fact that though the brewery collector was shot, but whether out of revenge for some personal wrong done to his assailant or by mistake or accident did not appear, and there was no fact or circumstance from which it could be reasonably inferred that the shooting had some connection with the collector's employment.

The present case is clearly distinguishable from the cases referred to in which compensation was denied, in that it cannot be properly said here that there was any malicious design on the part of the German naval forces against Foley or any other passenger, and it may be safely assumed that the prime object of the German naval forces was to destroy the enemy's ship and not the lives of its passengers.

It is said that the attack made on the Lusitania, from a humane and civilized standpoint, was barbarous and cruel and in violation of the law of nations, and that therefore the act of torpedoing the steamer was not within the contemplation of the employer, when the risk of going by such steamer was undertaken by its agent Foley.

We do not think that the lawfulness or unlawfulness of the conduct of the German naval officers affects the matter at all. If the Lusitania had been attacked by a German cruiser and instead of surrendering, offered resistance or attempted to run away and thereupon the German cruiser, by a well-directed shot, struck the steamer in a vital part, causing her to sink, and Foley to lose his life, it would hardly have been contended by respondent that the death of Foley was not due to an accident arising out of his employment. Foley's employer knew that the former had taken passage on a British ship and that such ship was subject to the risk of capture by the German naval forces, in what manner that might be accomplished was unimportant, so long as the employer was aware of the risk. Whether the ship was destroyed by lawful or unlawful means is immaterial.

We think, therefore, that Foley's death was due to an accident while in the course of his employment and that such accident arose out of his employment.

The judgment of the Court of Common Pleas is reversed and the case is remanded to that court to be proceeded with, according to law.