MARGARET STEINMETZ, PETITIONER-RESPONDENT, v. SNEAD & COMPANY, RESPONDENT-PROSECUTOR.

Submitted May 2, 1939—Decided August 14. 1939.

Before Justices PARKER, BODINE and PERSKIE.

For the prosecutor, *Kellogg & Chance* *(R. Robinson Chance,* of counsel).

For the respondent, *William T. Cahill.*

The opinion of the court was delivered by

PERSKIE, J. Prosecutor, Snead & Company (hereafter referred to as Company), whose factory is located in Jersey City, New Jersey, is engaged in the business of installing library book-stacks, partitions and shelving.

The company had a job at the Library of Congress Annex, Washington, District of Columbia, which required the services of a foreman. It employed Jacob Steinmetz (hereafter referred to as employee) who had worked for it for many years both in its factory and on its outside jobs; he was a dependable man. Pursuant to his employment, as foreman of a crew of iron workers, employee began his work, on the job at Washington, at eight o'clock in the morning of January 8th, 1936. He assisted the workers in the lifting of steel plates from one floor to another; each plate weighed between one hundred and seventy-five and two hundred pounds. In the course of that work one of the workmen released his hold on a plate as a result of which a great strain was placed upon the employee. Immediate resultant consequences justify the conclusion that as a result of the workman releasing his hold, as aforesaid, the situation called for and was given unusual effort by the employee and from that unusual effort came unusual exertion. For the employee immediately following the stated incident leaned against a column, complained of pain and placed his hand over his left side. He walked some twenty-five feet and then was assisted the remaining seventy-five feet to the office of the company. He was there given a glass of water; his hands were cold and clammy, his color was cyanotic and he lapsed into unconsciousness. He was taken to the hospital but when he arrived there at eleven twenty-five A. M., he was pronounced dead. An autopsy was performed and the cause of death stated was "acute cardiac dilatation."

On May 15th, 1936, the widow of the employee filed a dependent's claim petition for compensation under our Workmen's Compensation act. The company's insurance carrier covering its contracts of employment in New Jersey answered the petition. That answer is not factually very informative. It merely states and restates that there was "no accident;"

and that the employee did not die "as the result of an injury arising out of and in the course of his employment."

Hearings were conducted in the bureau. It appears that the company had two insurance carriers. One, as already stated, covering its contracts of employment in New Jersey and another covering its contracts of employment in Washington, District of Columbia. Each carrier was represented at the hearings. Each carrier denied that the employee died as the result of a compensable accident. Each carrier obviously sought, in the event it was determined that the accident was compensable, to place the liability therefor upon the other.

In the light of the stated circumstances, two problems required decision. Where was the contract of employment with the employee effected? Was the death of the employee the result of an accident which arose out of and in the course of his employment? The proofs on both problems are conflicting. We shall make no attempt to state them in detail. It will suffice, on this application, if we make but general observations with reference thereto.

1. In support of the claim of the widow that the employee was employed in New Jersey, two letters from the company to the employee in his lifetime were offered and introduced. The first is dated November 21st, 1935; it states that the employee was to report for work on the job at Washington when notified to do so, and that the company would pay his traveling expenses and for his time while traveling; the second letter is dated January 3d, 1936, and states that the employee is to report for work on the job at Washington, District of Columbia, at once, and that he would be allowed railroad fare, board, and traveling time. Upon these proofs and all other proofs submitted in support of the widow's claim, as well as all proofs submitted in support of the claim that the contract of employment with the employee was effected in Washington, District of Columbia, the bureau determined that the contract of employment was effected in New Jersey; that when the employee was sent to Washington, his contract of employment in New Jersey was not terminated, and that it was merely a "transfer" to another place.

2. The proofs for the widow further tended to prove that the employee was a man of good health; that he had never prior to his death consulted a doctor except for some hand injury. And her expert medical proof further tended to prove that there was a causal relationship between the work the employee had been doing and his death. On the other hand, the proofs for the company tended to prove that the employee had a very bad heart condition and one that had existed for about fifteen years prior to his death. The doctor who performed the autopsy testified that the condition of decedent's heart was the worst he had ever seen. Additional expert medical testimony for the company tended further to prove that the employee was afflicted with the disease described as cardio-renal hepatic, which, as explained, means a disease of the heart, kidneys and liver, and that there was no causal relationship between the work which the employe was doing and his death.

Upon these conflicting proofs the bureau found that the employee died as the result of an accident which arose out of and in the course of his employment.

Accordingly, on December 30th, 1938, the bureau awarded the widow compensation for three hundred weeks at $20 a week, or $6,000 and made allowance for funeral expenses, medical expenses and for attorney's fee.

Because the "accident occurred" in Washington, District of Columbia, there could, of course, be no appeal to any Court of Common Pleas in this state. *R. S.* 34:15-66; *Frank Desiderio Sons, Inc.,* v. *Blunt,* 11 *N. J. Mis. R.* 494; 167 *Atl. Rep.* 29.

The company, therefore, made an application to the Chief Justice for a writ of *certiorari* to review the award of the bureau. That application was based upon the premise that the bureau erroneously determined the two problems or issues before it. The application was denied.

Thereafter the company made a second application to the Chief Justice for a writ of *certiorari.* This application was not based upon a reconsideration of the grounds upon which the first application was denied. It was based upon the

ground that, irrespective of the place (New Jersey or the District of Columbia) where the contract of employment with the employee was effected, our Workmen's Compensation act does not apply to a death, as here, which followed as the result of an accident occurring in Washington, District of Columbia; that to hold our act applicable, under the circumstances, would be repugnant to article I, section 8, clause 17 of our Federal Constitution which provides as follows:

"The Congress shall have power * * * To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State, in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings: * * *." And also would be repugnant to article VI, section 2 of our Federal Constitution making the laws of the United States the supreme law of the land.

The Chief Justice after considering the second application ordered that petitioner show cause before Part II of this court why a writ of *certiorari* should not be allowed to review the determination and judgment of the bureau; and further ordered that the application aforesaid "may be made upon all the grounds presented * * * on both the first and supplemental application if counsel for prosecutor shall so desire." Counsel for prosecutor has chosen to restate and reargue all grounds stated and argued before the Chief Justice.

Upon the conflicting proofs presented, we make the following findings—factually and legally.

*First:* We are entirely satisfied that both factors incident to the work done by the employee, namely, the unusual effort and resultant unusual exertion did, in fact, aggravate decedent's pre-existing condition as a result of which he died of "acute cardiac dilatation." Death under such circumstances is compensable; for it clearly arose out of and in the course

of his employment. *Bernstein Furniture Co.* v. *Kelly*, 114 *N. J. L.* 500; 177 *Atl. Rep.* 554; *affirmed*, 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; *Hentz* v. *Janssen Dairy Corp.* (*Court of Errors and Appeals*), 122 *N. J. L.* 494; 6 *Atl. Rep.* (*2d*) 409; *Rother* v. *Merchants Refrigerating Co.*, 122 *N. J. L.* 347; 6 *Atl. Rep.* (*2d*) 404.

*Second:* The contract of employment was effected in New Jersey. From that premise flows the settled rule of law that compensation for the death of an employee arising out of and in the course of his employment will be awarded in this state although the accident actually occurred outside of this state. *Rounsaville* v. *Central Railroad Co.*, 87 *N. J. L.* 371; 94 *Atl. Rep.* 392 (reversed on other grounds, 90 *N. J. L.* 176; 101 *Atl. Rep.* 182); *Foley* v. *Home Rubber Co.*, 89 *N. J. L.* 474; 99 *Atl. Rep.* 624; *Frank Desiderio Sons, Inc.*, v. *Blunt*, *supra; Hi-Heat Gas Co.* v. *Dickerson*, 12 *N. J. Mis. R.* 151; 170 *Atl. Rep.* 44; *affirmed*, 113 *N. J. L.* 329; 174 *Atl. Rep.* 483; *Sweet* v. *Austin Co.*, 12 *N. J. Mis. R.* 381; 171 *Atl. Rep.* 684. See note in 3 *Mercer Beasley Law Review*, No. 2, 212, *et seq.*

*Third:* But it is stoutly argued for the company that when, as in the case at bar, the outside state (the District of Columbia) is one over which, by the Federal Constitution, the power of exclusive legislation in all cases is given to the Congress, and that when the Congress enacted a workmen's compensation law for the District of Columbia without reference to our Workmen's Compensation act, then the federal law thus enacted must govern no matter where the contract of employment was effected. The *ratio decidendi* in the case of *Murray* v. *Garrick & Co.*, 291 *U. S.* 315; 78 *L. Ed.* 821, is urged in support of the argument for the company. In that case it was held that the Workmen's Compensation act of the State of Washington does not apply to injuries occurring within Puget Sound Navy Yard, although such place is within the exterior boundaries of the state, since such place had been ceded to the United States and is subject to the exclusive jurisdiction thereof.

For the petitioner, on the other hand, the argument for the

company is challenged. That challenge is based upon the premise that the *ratio decidendi* in the case of *Murray* v. *Garrick & Co., supra,* is without application to the case at bar. We are told that it is not applicable because the decision turned upon the question of the time of cession of territory by the state to the federal government, and that the decision does not pass upon the established rule of law that the place where the contract of employment was effective is determinative of the question of jurisdiction both under our Workmen's Compensation act and under the Federal Compensation law of the District of Columbia. Finally it is argued for the widow that the reasoning of the decision in the case of *Packers Association* v. *Industrial Accident Commission of the State of California,* 294 *U. S.* 532, 550; 70 *L. Ed.* 1044, supports the judgment in her favor.

In that case it was held that full faith and credit are not denied to an Alaska Workmen's Compensation act in refusing to allow it as a defense to a proceeding under the California Workmen's Compensation act for injuries sustained in Alaska by one not a resident of California who entered into a contract there to work in Alaska for a season between two or three months, at the conclusion of which time he was to be returned to California and was there to be paid.

In light of all that has been written, we are entirely satisfied that the first and second points are altogether free from reasonable debate. We do not, however, desire to be understood as intimating any opinion as to the third point. It is sufficient, if with reference thereto, we observe, on this application for a rule to show cause, that it presents an important question of first impression in this state and that it is not free from reasonable debate.

Accordingly a writ of *certiorari,* limited solely to the third point, will be allowed. Costs to abide the event.