(No. 16464.—Judgment affirmed.)

The Solar-Sturges Manufacturing Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Charles E. Holmes, Defendant in Error.)

*Opinion filed February 17, 1925.*

1. Workmen's compensation—*when injury to salesman arises out of and in course of employment.* An injury to a manufacturing company salesman who was struck by a street car while going to call on a customer arises out of and in the course of his employment although at the time of the injury the salesman was crossing the street on his return from a store where he purchased cigars to be used when making his calls, which the company allowed as a part of his expense account.

2. Same—*when award for permanent partial incapacity is justified.* A finding and award for permanent partial incapacity is justified where the evidence shows that the employee, who was struck by a street car, is rendered unable to earn his former wages as salesman and no evidence of improvement in his condition is shown since his recovery from the total disability immediately following the accident, and where physicians testify that the prognosis is bad for complete recovery although none express the opinion that the incapacity is permanent.

Writ of Error to the Circuit Court of Cook county; the Hon. Harry M. Fisher, Judge, presiding.

Moloney & Postelnek, for plaintiff in error.

Bulkley, More & Tallmadge, for defendant in error.

Mr. Justice Dunn delivered the opinion of the court:

Charles E. Holmes, a salesman employed by the Solar-Sturges Manufacturing Company, was struck by a street car and injured on January 10, 1923. Claim was made for compensation and was refused on the ground, among others, that the accident did not arise out of and in the course of the employment. An application for adjustment of claim was filed, claiming compensation under paragraph (*e*) of section 8 of the Compensation act for fifty

per cent loss of the use of both legs. The application was referred to an arbitrator, who made an award under paragraph (*d*) of section 8 of $14 per week for four weeks of temporary total disability, $14 per week for 263-6/7ths weeks of permanent partial incapacity, and $139.45 for medical, surgical and hospital services. Upon review the award was confirmed by the Industrial Commission. The circuit court of Cook county on *certiorari* found that the record was free from error except as to the amount and period of weekly payments, which were modified and fixed at $9.50 a week for 388-4/5ths weeks. A writ of error was issued on the petition of the Solar-Sturges Manufacturing Company to review this judgment.

The plaintiff in error contends that the accidental injury which was the basis for the award did not arise in the course of the employment. Holmes was a salesman employed by plaintiff in error to sell in the city of Chicago and Lake county, Indiana, the products of his employer, consisting of ice cream cans and tubs. His compensation consisted of a salary of $30 a week and certain commissions and allowances based upon the business done by him. His average earnings were $62.73 a week during the year preceding the accident. Holmes worked under the direction of a sales manager but he had no fixed working hours. He did not report to his employer's office daily except by telephone but started from his own home and made calls upon his customers as he saw fit. On the morning of January 10, 1923, he left his home to call on a customer at 1800 Cornelia avenue, took a street car and got off at the northwest corner of Lincoln and Cornelia avenues, the nearest point reached by the car to 1800 Cornelia avenue, which was one block west and on the same side of the street, so that he was not required to cross the car track to reach his destination. However, his employer allowed him an expense account, to be used, among other things, in buying cigars for his customers, and he crossed the street and car

315—23

track to a store and there bought some cigars, some of which he expected to use with the Certified Ice Cream Company, the customer at 1800 Cornelia avenue. As he was coming back over the car tracks after leaving the store he was struck by a street car and received the injury for which the award was made. The injury received under these circumstances arose out of and in the course of his employment. *Illinois Publishing and Printing Co.* v. *Industrial Com.* 299 Ill. 189; *McNaught* v. *Hines,* 300 id. 167; *Porter Co.* v. *Industrial Com.* 301 id. 76.

The plaintiff in error contends that the award was based merely upon a prospective loss of earnings and not upon an actual existing loss. Holmes was totally disabled for work four weeks, and in the twenty-nine and two-sevenths weeks following his return to work for the same employer and at the same work he earned $1447.99, or approximately $50 a week. His employer, the plaintiff in error, then changed the basis of his compensation to a salary of $60 a week, plus ten cents for each call reported. This method of compensation had been in use nearly four months before the hearing by the commission, and therefore when that hearing was had Holmes was actually earning or being paid as much as he was paid for his services before the injury. However, the twenty-nine and two-sevenths weeks in which Holmes earned after the accident about $50 a week included the time from February to August 31,—the season during which the evidence shows his earnings in the previous year greatly exceeded his monthly earnings from September 1 to January 1, being nearly twice as much by the week. The sales manager of the plaintiff in error testified on the hearing on review in December, 1923, that the change in the method of fixing Holmes' compensation made on September 1, 1923, was made on a basis then adopted for fixing the compensation of all salesmen on an estimate of what each would be worth to the company; that experience had shown that in comparison with

the other salesmen Holmes was not earning the compensation so determined; that he had been with the plaintiff in error for a long time, and if he had been a new or younger man his salary would have been immediately reduced after the experience of the first three months, September, October and November, and that the sales manager and the president had decided to change Holmes but did not want to tell him so until after the holidays. From the evidence it is apparent that after the accident Holmes' earning capacity was decreased considerably, for in the most productive months he was able to earn an average of only about $50 a week, whereas in the preceding year, which included the least productive months, he had earned more than $62 a week and in the more productive months had earned nearly $78 a week. The result of the new method of compensating him demonstrated that he was not able to earn as much as before the accident or sufficient to justify his employer in paying him as much, and the employer had already determined to make a change with reference to him.

Holmes was sixty-two years of age. He was struck by the street car at about nine o'clock in the morning and rendered unconscious. When he regained consciousness he was in the X-ray room at the Ravenswood Hospital and he remained in that hospital ten days. He was unable to walk when he was taken home. On February 7 he reported to his employer and for a time worked probably an hour a day, being taken around to his customers by his son in an automobile for about two weeks. When the case was heard before the arbitrator, May 25, 1923, Holmes testified: "I was able to go up and down the elevated stairs without difficulty. Now I have considerable difficulty in going up and down the elevated stairs and I am mighty careful how I get on the street cars. At the present time I have got a weakness in my limbs here and my two knees here that were injured at that time,—especially this right knee is weak, and leg,—and that is the reason why I cannot get

up and down the elevated steps or any other steps, and the weakness in the back. I have a numbness below the knees here—a partial numbness. The right is the one that is affected the worst. There is some swelling there. If I am around the city too long, of course it hurts me, and if I happen to get the right leg in a certain position I can't move without holding it and fetching it around. If I undertook to put my weight on the leg in that position I couldn't stand on it. I am able to walk up and down stairs by taking hold of something to get hold of.  *  *  * My condition is not getting any better. During the last two or three weeks I have not been as well as I was before. *  *  * Prior to the accident of January 10, 1923, I did not have any pain along the spine or in the back or body. Now I have a great deal of pain right here in the spine of the back and on each side. I mean each side of the backbone,—not in the side of the body. It seems to be up there six or eight inches [indicating] and the greater weakness there [indicating.] It is just about in the center part, and I have pain in that vicinity most of the time since the accident and it is still there. I have never had anything of that kind before the accident."

Dr. Toeller attended Holmes at the hospital, and testified that Holmes was brought into the hospital and when the doctor saw him he was in a semi-conscious condition. There was a marked amount of pain in the lower cervical region of the spine as well as in the dorsal, lower dorsal and lumbar. His right knee was considerably swollen, and he complained of pain in the left knee, which was also somewhat swollen. There was a head injury of some kind but no fracture of the skull or bleeding from eyes or ears. The pupils of the eyes were fixed and did not re-act to light and accommodation. The doctor testified further: "The prognosis in a case of this kind is rather doubtful. It will be very hard for me to give an honest prognosis here. A man of Mr. Holmes' age that receives a blow on the head

which causes semi-consciousness, and the injury to his spine and knees, in my opinion will go along indefinitely, and I wouldn't want to say that Mr. Holmes in three or six months or a year from now will be what I would like to have him be.   *   *   *   My testimony concerning pain in certain portions of his vertebræ,—first the cervical and then the dorsal and the lumbar region,—is based upon the subjective complaints of the patient. There was no external evidence of pain there. The only objective symptom of injury was the swelling of the knee and the fact that his pupils did not re-act to light and accommodation, and the wound, which I am not positive of to-day, to his head."

Dr. Swift examined Holmes on May 23, 1923, and testified: "I found the following objective symptoms: A scar an inch and a half long on the back of the head, right occipital region; the right knee fourteen and three-fourths inches in circumference, the left fourteen inches. There is no disfigurement where the scar is, because it is above the hair line and covered with hair. He had crepitation over the external semi-lunar cartilage in the right knee. X-rays show an osteo-arthritis of the lumbar spine. Objectively I believe that is all I can testify to. I believe the reason for the difference of the left and right knee is because he had a loosened semi-lunar cartilage. I examined the knee and found objectively the crepitation and the enlargement. By crepitation I mean a grating sound. Mr. Holmes appears to be about sixty years old. That condition might come from trauma.   *   *   *   Assuming that there was an injury which produced this result, occurring on January 10, 1923, the prognosis is bad for recovery. The condition in the knee does frequently cause pain. The knee becomes locked and may give way on him to go up or down-stairs; step upon cars, street cars or any elevation; difficulty in getting over uneven surfaces; tires easily."

No evidence was introduced at the hearing on review as to any improvement or deterioration in Holmes' physi-

cal condition since the hearing before the arbitrator, and the record contains no evidence as to his condition later than May 25, 1923, except the testimony of the plaintiff in error's sales manager as to what he was able to earn in September, October and November, 1923. While the physicians do not express the opinion that the incapacity is permanent, in those words, they do say that the prog-nosis is bad for recovery, and a consideration of all the evidence justifies the finding and award.

*Judgment affirmed.*

---

(No. 16374.—Judgment affirmed.)
THE CITY OF WINCHESTER, Appellee, *vs.* WILLIAM H. RING, Appellant.

*Opinion filed February 17, 1925.*