(No. 21408.— )

Swift & Co., Defendant in Error, *vs.* The Industrial Commission *et al.*—(Florence Hutmacher *et al.* Plaintiffs in Error.)

*Opinion filed October 22, 1932—Rehearing denied Dec. 13, 1932*

Edgar P. Holly, for plaintiffs in error.

Pope & Driemeyer, for defendant in error.

Mr. Justice Orr delivered the opinion of the court:

Carl Hutmacher, a traveling salesman for Swift & Co., died as a result of injuries received while driving the company's car on the evening of October 23, 1928. He was survived by his widow, Florence Hutmacher, and two minor children. An application for an adjustment of claim under the Workmen's Compensation act was filed, and on a

hearing before an arbitrator an award in favor of the widow and children was made in June, 1929, in the sum of $16 per week for a period of 278 weeks and one week at two dollars, in accordance with paragraph (a) of section 7 of the Workmen's Compensation act then in force. Following a review by the Industrial Commission this award was approved and confirmed on January 18, 1930. Swift & Co. then caused the case to be taken by *certiorari* to the circuit court of St. Clair county, where, after a delay of nearly two years, an order was entered on January 4, 1932, vacating and setting aside the award of the Industrial Commission. In order that the case might be brought here for review a writ of error was then awarded by this court to the petitioners.

The sole question at issue is whether Hutmacher's death resulted from an accident arising out of and in the course of his employment.

It is shown by the record that Hutmacher had been in the employ of Swift & Co. (herein called the company) for several years, selling their commodities, collecting accounts and making regular reports. The company furnished him with an automobile and paid for the gasoline and other expenses connected with its operation. He had both verbal and written instructions that the automobile was to be used only in the furtherance of company business. His contract of employment was verbal and was made in the East St. Louis office of the company. By its terms he was assigned to territory in the extreme southeastern portion of Indiana, with headquarers at New Albany, Indiana, where he made his home. To a certain extent he was governed in his calls on the trade by route sheets furnished him by the company. For some months prior to the date of the accident he had received urgent and repeated instructions to collect an overdue account of a customer named McIntosh, at Marengo, Indiana. With reference to this collection he had received a letter from the credit department of

the company, dated September 21, 1928, stating: "In view of the manner in which you have handled this account we want you to endeavor to effect immediate collection of the entire account of $236.59, and if you are unable to do so, let us know why not." On October 23, 1928, the date of the accident, a telegram was also sent by the company to him, reading, "McIntosh Marengo wire results mail details quick." This telegram was never delivered to Hutmacher but shows that at that time he was fully authorized by his employer to make this particular collection. The evidence shows that for some time prior to the date of the accident the debtor, McIntosh, was engaged in the erection of a building at Hardinsburg, some eight or nine miles southeast of Paoli, Indiana, and on State highway No. 150. During his absence from Marengo the business of McIntosh was left in charge of his wife. Several weeks prior to October 23 Mrs. McIntosh had told Hutmacher, referring to the past due account: "I told him that he could go over where John [McIntosh] was working, [at Hardinsburg,] and he said that he could but that it was out of his territory." The evidence shows that on October 23 Hutmacher called on Mrs. McIntosh at their place of business in Marengo, but she did not place any order with him on that date. McIntosh was at Hardinsburg that day, but his wife did not tell Hutmacher the hours her husband remained there. On Monday, October 22, 1928, Hutmacher began his usual itinerary in the trade territory assigned to him. He was accompanied by one Watkins, a soap salesman also employed by Swift & Co. Watkins did not make these trips regularly but had been requested by the company to go with Hutmacher during that week. On Monday and Tuesday, October 22 and 23, Hutmacher called on his customers, took orders for goods and received payment for a number of orders, which were later accepted and filled by the company. After being employed all day Tuesday on his employer's business, Hutmacher discovered that he had

forgotten his brief case and remembered that he had left it at the hotel in English where he and Watkins had stayed the previous night. According to the testimony of Watkins they drove back to English, arriving there about eight o'clock that evening. Another salesman testified that he saw Hutmacher come into the hotel at English, spoke to him, and saw Hutmacher pick up his brief case and leave. From English, Hutmacher and Watkins drove north seventeen miles to Paoli, then turned southeast on State route No. 150, which leads through Hardinsburg. After driving southeast out of Paoli for a distance of about two miles, then being within about seven miles of Hardinsburg, Hutmacher lost control of the automobile as a result of a flat tire. The car left the highway and struck a tree, injuring both Hutmacher and Watkins. Hutmacher died within a few hours after the accident, which occurred at about nine o'clock P. M.

In behalf of the company it is urged that Hutmacher had completely departed from his sphere of employment at the time he received his fatal injury. In this connection it is argued that there was "no evidence whatever that the trip Hutmacher was making was necessary so far as the business of Swift & Co. was concerned," and that his death, therefore, did not arise out of and in the course of his employment. But the evidence fails to show any facts to prove that Hutmacher had departed from his duty at the time of the accident. It is true that he had been delayed in the completion of his day's work by the necessity of returning to English to get his brief case and personal effects and was therefore temporarily behind his scheduled time, but this delay, or the fact that at the time of the accident Hutmacher was not in the exact location designated weeks in advance by the company trip-schedule, does not of itself indicate that he had departed from the sphere of his employment. The record shows that he had quite a latitude in exercising his own discretion, so long as he carried out

his general instructions. There was no written contract between him and the company, but a representative of the company testified that so long as his services were satisfactory Hutmacher knew he had a job. There was no testimony to show that the automobile furnished by the company to Hutmacher was being used for pleasure or any other purpose inconsistent with the terms of his employment. He had been repeatedly urged to see McIntosh and make the delinquent collection, and at the time of the accident he was only a short distance from Hardinsburg and driving in that direction. The testimony of George A. Carter, sales manager of the company, shows that the schedule made out for the salesmen to follow was only to show the approximate times of arrival and departure to and from different towns, and he admitted that it was subject to variance by delays here and there while calling on the trade. It was also shown that in the previous expense account, dated October 20, 1928, Hutmacher had made a special trip to Paoli and return, on company business, outside of the regular schedule prepared for him, and that this trip had been approved and the expense thereof paid. On cross-examination Carter admitted that the salesmen had discretion as to what part of the day or night they called upon a particular customer and that the company did not interfere with the exercise of that discretion. The testimony of O. E. Howerton, a merchant at Milltown, also shows that at seven o'clock of the same evening that Hutmacher was fatally injured he called at Howerton's store, accompanied by Watkins, and received an order and check for the company. This transaction was several hours later than the scheduled time Hutmacher was supposed to call at Milltown, but this witness said he had often called on witness for orders after supper.

Enough of the evidence has been referred to to show that Hutmacher had been allowed a certain degree of latitude in the hours he worked and the times he called on the trade

and was not literally bound to quit work at six o'clock in the evening, as his trip-sheet schedule provided. In the absence of any evidence to the contrary, the presumption of law obtains that Hutmacher, at the time of the accident, was performing the duty imposed upon him by his contract with his employer. *Schlauder* v. *Chicago and Southern Traction Co.* 253 Ill. 154.

In this case the arbitrator, and on review the commission, heard and saw the witnesses and found the issue in favor of Hutmacher's widow and children. This court has repeatedly held that it will not reverse the decision of the Industrial Commission on a review of the facts unless its decision is against the manifest weight of the evidence. (*Keller* v. *Industrial Com.* 302 Ill. 610.) Where the facts are controverted and the determination of a disputed question of fact depends upon credit to be given contradictory testimony the courts will give due weight to the finding of the commission, which is qualified by experience and special study to weigh the facts applicable to cases within its jurisdiction. (*Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43; *Consolidated Coal Co.* v. *Industrial Com.* 311 id. 61; *Consolidated Coal Co.* v. *Industrial Com.* 320 id. 171.) In this case there was no evidence in the record which justified the reversal of the Industrial Commission's award by the circuit court. On the contrary, the evidence fully warranted the conclusion of the Industrial Commission that Hutmacher's death resulted from an accident arising out of and in the course of his employment.

The judgment of the circuit court is therefore reversed and the award of the Industrial Commission is confirmed.

*Reversed and award of commission confirmed.*