(No. 25521.—

THE CONNOR COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CECELIA CLEARY, Defendant in Error.)

*Opinion filed June 14, 1940.*

SHAW, J., dissenting.
MURPHY, J., took no part.

HUNTER, KAVANAGH & McLAUGHLIN, for plaintiff in error.

KNOBLOCK & SLOAN, (JOHN F. SLOAN, JR., of counsel,) for defendant in error.

Mr. Justice Farthing delivered the opinion of the court:

Harold Cleary was shot and killed February 12, 1938. He left Cecelia Cleary, his widow, and two dependent daughters. He was employed as a traveling salesman for the Kinsey & Mahler Company, now the Connor Company, the plaintiff in error. One of his duties was to collect accounts for his employer, which was engaged in the wholesale plumbing supply business.

Cleary had heard that the city of Havana, Illinois, was going to extend its waterworks system. On Saturday morning, February 12, 1938, Cleary, after borrowing $5 from a customer in Havana, and obtaining some gasoline on credit, met Evert Bell, the city superintendent of streets of Havana, in front of the city hall. Bell had the authority to recommend the purchase of materials for the city. The two went to a tavern for a drink, and, after a time, to another called the Ringside tavern. At this place Cleary talked to the proprietor about the sale of an air-conditioning unit. Here he met Roy Blackford, whom he had known for about a month. The three men then went to a third tavern, and returned later to the Ringside tavern, where they had lunch. About 2:00 P. M. the trio drove to the city waterworks to see the superintendent, Fred Porter, as Cleary had business with that department of the city. Cleary did not know Porter, but Blackford did and introduced the two men. Cleary discussed the sale of some supplies, and also mentioned the payment of a bill due and owing by the city of Havana to Cleary's employer for supplies previously sold. Porter said the bill had been introduced, (evidently at the city council meeting,) and he thought it had been paid, but if not, it would be paid immediately. This conversation took place at the waterworks, while Cleary remained in the car, and was had in the presence of Blackford and Bell, contrary to the contention of

the plaintiff in error. Cleary then got out of the car and went with Porter into the storeroom of the waterworks, where they stayed for half an hour. From the waterworks Bell, Cleary, and Blackford drove to the city hall, where Bell got out. After stopping at Minn's tavern Cleary and Blackford started for Peoria with the latter driving. En route they picked up Harold Polite, a "hitch-hiker." They stopped at Lewistown for a drink, after which Blackford started to drive in a direction opposite from Peoria, but Cleary took the wheel and drove back toward Peoria. A little later they stopped at the Little America tavern. Over objection, the proprietor of this place testified Cleary told him Blackford had a gun. This witness said he suggested that Polite drive the car when the three men left. After Polite had driven but a few miles toward Peoria, Blackford ordered him to slow down, drew a pistol and shot Cleary in the head. Blackford then forced Polite to back the car a short distance, and to remove Cleary's body from the car. Blackford covered Polite with his gun, and told Polite to take Cleary's money, which Polite refused to do. About that time an automobile approached. At Blackford's orders Polite pretended to fix a tire. The other car passed without stopping. Immediately afterwards, Blackford got in Cleary's car and drove away. At the hearing, Blackford testified he intended to rob Cleary.

Cecelia Cleary filed with the Industrial Commission a petition for compensation for herself and two daughters on account of the death of the husband and father. The arbitrator entered an award in the amount of $4800, which was confirmed by the Industrial Commission, and, on *certiorari,* by the circuit court of Peoria county. We granted this writ of error.

The only question presented is whether or not the death of Harold Cleary arose out of and in the course of his employment. The rule is that there must be some causal relation between the employment and the injury. We have

here the case of an employee, with the duties of selling wares and collecting for them, who was killed by a companion for the purpose of robbery. Does such a death arise out of the employment? This court apparently has never passed upon this question directly.

Plaintiff in error cites *Sure Pure Ice Co.* v. *Industrial Com.* 320 Ill. 332, where an employee, working at night, refused to stop at the command of a police officer, and was killed by the officer. Compensation was there denied, but that case is not helpful. Plaintiff in error also cites *Mix Dairy Co.* v. *Industrial Com.* 308 Ill. 549, where the driver of a milk wagon, who sold merchandise for cash, was shot and killed at work. Compensation there was also denied, but in that case there was no evidence of robbery done or intended, and no clue as to the identity of the killer or motive for killing was shown. Here the proof shows that the killing was in pursuit of a plan to rob to get Cleary's money, and, in that connection, the language used in *Jersey Ice Cream Co.* v. *Industrial Com.* 309 Ill. 187, is illuminating. There this court commented upon the lack of evidence to show attempted robbery, and said: "While it might be said that such an inference is equally reasonable with an inference that the killing was by a personal enemy, there is no evidence in the record whatever that the killing was in pursuance of an attempt to rob the deceased either of his own funds or the funds of the company or that it occurred in an altercation with a customer." The court denied compensation, but, inferentially, on the ground that no proof of attempted robbery was in the record.

Other jurisdictions have passed upon this question. In *Hunt* v. *Guntzwiller Baking Co.* 9 N. E. (2nd) 129, an Indiana case, deceased was a salesman whose duty it was to sell and collect money for goods sold. He was found dead on his regular route, all money on his person gone. The court, granting an award, discussed the question of whether or not the death arose out of the employment, and

concluded: "The accident was the result of a risk which was reasonably incidental to the employment."

In *Empire Health and Accident Ins. Co.* v. *Purcell,* 132 N. E. 664, another Indiana case, an insurance solicitor, who was also a collector, was assaulted while on his route. The court held the injury arose out of the employment, and affirmed an award of the State Industrial Board. In *Boulanger* v. *First Nat. Stores,* 163 Atl. (Conn.) 261, the court had for consideration a case where a store manager, walking along the street and who was thought by two robbers to have store receipts in a brief case he was carrying, was set upon by them and killed. The court granted compensation and said: "While an injury to an employee resulting from a risk to which everyone is exposed and to which he is not by his employment abnormally subjected does not arise out of that employment, if, by reason of the nature of duties of his employment the risk and hazards are greater than is common to ordinary persons, the injury may be held to arise out of the employment because the abnormal risk was incident thereto." In *Ridenour* v. *Lewis,* 238 N. W. 745, the Supreme Court of Nebraska upheld an award of compensation and said: "It would follow in the instant case that where the employment involved the installation, repair, and 'servicing' of radios sold by the master, and also the collection of the master's accounts by the employee, and where such employee, passing along the public streets pursuing his employment, with one of such accounts in his possession for collection, is there assaulted for the purpose of robbery, and therein and thereby receives wounds causing his death, such injury arises out of and in the course of his employment."

The testimony, here, of Cleary's discussion of a bill owed to his company by the city of Havana, the reply by the city official that the bill would be paid immediately, followed by the departure of Cleary and the city official from the presence of Blackford, taken with the free spending of

money by Cleary, would lead Blackford to believe that Cleary had company money in his possession. The statement by Blackford that he killed with the intention to rob, and Polite's testimony that Blackford ordered him at the point of a gun to take Cleary's money, make sufficient proof to establish robbery as the motive for the assault. Plaintiff in error argues that the borrowing of $5 by Cleary, and the purchase of gasoline on credit in the early morning of February 12, 1938, shows that he had no large amount of money with him that day. This is speculation, and it is just as plausible to assume that Cleary borrowed this money so that he would not use the employer's money during the day. It should be further noted that Blackford knew nothing of the $5 loan or the purchase of the gasoline on credit. The evidence shows that Cleary paid for the drinks consumed by Bell, Blackford and himself throughout the day, and this would raise in the mind of Blackford the presumption that Cleary had some money on his person. In view of these facts we believe that the findings of the arbitrator, the Industrial Commission, and the circuit court, that the injury arose out of the employment, are amply sustained by the evidence. We cannot disturb those findings. *Chicago and Illinois Midland Railway Co.* v. *Industrial Com.* 362 Ill. 257.

We cannot agree with plaintiff in error's contention that the death of Cleary was the result of any voluntarily increased risk outside the reasonable requirements of his employment. The test is not what did happen afterwards, but whether, at the time that the alleged increased danger was incurred, a reasonable man could say that Cleary was stepping into a hazard not peculiar to his employment. It is to be remembered that Blackford was an acquaintance of Cleary, a companion, and a benefactor to the extent of introducing Cleary to Fred Porter, who represented a customer. This evidence shows their relations were friendly, and the fact that Blackford was carrying a gun was not

such as to put Cleary on guard, for no rational man will suspect a friend and companion of robbery. Certainly the courts cannot demand such a degree of human cynicism. In *Hunt* v. *Guntzwiller Baking Co. supra,* the deceased had been employed to cover a certain territory, make sales and collect therefor. He had been on friendly terms with a young man by the name of Leesey, whom he took with him on his trip the day of his death. Later the employee was found dead, his purse empty, and Leesey was never seen again. In discussing whether decedent had increased the risk of injury to such an extent that it would not be within contemplation of the nature of his employment, the court said: "Under the circumstances here, it cannot be contended that appellants' decedent created the hazard which caused his death by permitting Leesey to accompany him, unless it can be said, either from the evidence or reasonable inferences therefrom, that said decedent had reason to believe such accident might occur at the hands of Leesey. We can not conclude that the decedent created the hazard which caused his death, especially in view of the ultimate fact found by the board that the shot wounds were inflicted by persons unknown. Appellee urges that the uncontradicted evidence shows that the deceased permitted Leesey to accompany him on his trips without the knowledge of appellee; that Leesey inflicted the injury upon decedent which caused his death; and that appellants' decedent created the situation without the knowledge of his employer. There is no evidence and no legitimate inference could reasonably be drawn that appellants' decedent had reason to suspect that Leesey would attempt to rob him or inflict the injury. Furthermore, there was no rule or condition in the employment restricting any one from accompanying appellants' decedent on his trips." Similarly, the record in the instant case fails to show any instruction from plaintiff in error company forbidding their salesmen to take others with them on their business trips. In *Mt. Olive and Staunton Coal Co.* v. *In-*

*dustrial Com.* 355 Ill. 222, this court discussed the rule of increased risk, and held: "This rule is not to be extended so as to deprive an employee of the right to compensation merely because he accepts an unnecessary risk or danger." See, also, *Goodwin* v. *Omaha Printing Co.* 267 N. W. (Neb.) 419; *Industrial Com.* v. *Pueblo Auto Co.* 207 Pac. (Colo.) 479; *Continental Life Ins. Co.* v. *Gough,* 172 S. E. (Va.) 264.

Plaintiff in error insists that Blackford was drunk most of the day but admits that the evidence as to "the extent of Cleary's drinking is somewhat indefinite." Bell said that he could only testify that Cleary had taken one drink, a glass of beer, while in his company. Blackford said Cleary was sober when they left Minn's tavern and that he did not remember whether he had any drinks after that. Harold Polite said both Blackford and Cleary had been drinking; that Blackford was drunk but that Cleary was not a drunken man. He described him as being in a jolly mood when they were in the last tavern at which they stopped, the Little America. Cleary's condition, sober or intoxicated, had nothing to do with his death. Blackford ordered Polite to slow down the speed of the car, drew his pistol, shot Cleary through the head, forced Polite to remove the body from the car, ordered Polite to take Cleary's money and to pretend he was fixing a tire when another car approached. Blackford, unquestionably, had been drinking that day, but these acts are not consistent with a high degree of intoxication. Whatever degree of intoxication Blackford had reached is not material in this case.

We conclude that Harold Cleary met his death from an accident arising out of and in the course of his employment, as found by the circuit court, and the judgment of that court is affirmed. *Judgment affirmed.*

Mr. JUSTICE SHAW, dissenting.

Mr. JUSTICE MURPHY took no part in this decision.