(No. 28847.—

Hinckley & Schmitt, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Jacob Mueller, Defendant in Error.)

*Opinion filed November 21, 1945.*

ANGERSTEIN & ANGERSTEIN, (THOMAS C. ANGERSTEIN, GEORGE W. ANGERSTEIN, and CHARLES WOLFF, of counsel,) all of Chicago, for plaintiff in error.

ARTHUR A. WOLF, SCOTT J. VITELL, and LEO S. KARLIN, all of Chicago, for defendant in error.

Mr. JUSTICE GUNN delivered the opinion of the court:

Jacob Mueller made application for adjustment of a claim against Hinckley & Schmidt, (herein referred to as petitioner,) claiming compensation for accidental injury suffered in the course of his employment. The accident took place September 8, 1942. The arbitrator decided the

issues in favor of Mueller, (herein referred to as respondent,) which was confirmed on petition for review, with an increase in the amount of the award, and upon *certiorari* confirmed by the circuit court of Cook county.

The facts in the case are undisputed, but it is contended by petitioner that such facts show the accidental injury for which respondent is claiming compensation did not arise out of and in the course of his employment; that by reason of the facts being undisputed the question presented is one of law. *Farley* v. *Industrial Com.* 378 Ill. 234; *Puttkammer* v. *Industrial Com.* 371 Ill. 497.

The facts are as follows: September 8, 1942, respondent for a great many years had been an employee of petitioner as a driver of one of its trucks used in hauling and delivering beverages, soft drinks and mineral waters. On the same date his son was likewise a driver of one of petitioner's trucks. Each driver had his regular truck and his own route, and took care of the same. The trucks were loaded at a platform in petitioner's plant. A driver about to leave on his route would call one of the checkers to see that the load was correct before the driver left the plant, and the latter would know to whom he was delivering by looking at the check sheets. The driver did not have to punch a time clock, but each man would take his truck out in the morning, and when he returned from his route in the afternoon, after delivering his load, would see what orders had come in from customers on his route, and was then through for the day, and could go home, irrespective of the hour.

Respondent describes the employment as follows: "On them wagons or trucks, we have no real hours at all. Each man takes care of his route and returns to his place. We have no clock to punch in, no time to punch out. When we are through, if it happens two o'clock, three o'clock, four o'clock, we go home." The loading platform would

not accommodate all of the trucks at one time. Sometimes trucks standing in the driveway would be driven out into the street when necessary so drivers who wished to do so could leave early, and after such early drivers had left the drivers of the trucks standing in the street would drive their trucks back from the street into the premises. Sometimes the trucks returning in the afternoon would be loaded for the next day's delivery; and in the case of the respondent, on the afternoon of September 7, 1942, he had his truck loaded for the deliveries he was to make September 8. On the morning of the 8th respondent rode to work with his son Jack, who was also a truck driver. They rode in the car of the son, with the son driving, and arrived at petitioner's place of business about 7:40 in the morning. When they arrived at the place of business the truck of the son was parked out on the street in front of petitioner's plant. There was no place to park the son's car in which respondent and the son had driven to work. Respondent got out of the passenger car of the son, and in attempting to move the truck of the son fell and was injured. The occurrence is described by respondent as follows: "I came down with the son; my son's truck was out in front of the place, and I got in to pull it in the garage, to back it in, you know, and in getting on the truck I slipped." In answer to the question as to why he started to put his son's truck into the garage he answered: "Well, I took it in—he had his car there. There was no place to park; so I took it in, so he could move in that space. I was going to take it in the plant. In fact, I did not move it; I fell off of it when I went to get on. * * * There is too many trucks to put agin the platform, and we have two or three of them outside. They take them out so some of the boys who get out real early, they move them so the men can pull up into the plant." In his written statement made March 9, 1943, he stated: "On Tuesday, September 8, 1942, about 7:50 a.m., I was coming to work.

I saw Jack Mueller's truck, my sons, at the curb and I started to get in it to move it forward so that I could park my own 1937 Pontiac at the curb. I had hold of the handle with my right hand. I stepped up on the fender plate; my right foot slipped and I fell to the curb on my left side holding onto the handle with my right hand."

Petitioner contends that the above facts clearly disclose the respondent was not injured in the course of his employment; that it comes within the rule of the street accident, the danger of which applies to the public at large, and that the accident occurred before he had entered upon his employer's premises, and before he had assumed his duties as an employee. The respondent contends that while attempting to move the truck to be used later by his son he was performing a duty connected with the loading of the truck, which would have to be done by someone, and that therefore it comes within the course of his employment by being of benefit to his employer, and the fact he was creating a parking space was only incidental to such employment.

·It has been many times held injuries suffered while an employee is going to or returning from the employer's premises do not arise out of or in the course of the employment, so as to entitle him to compensation. (*Payne and Dolan* v. *Industrial Com.* 382 Ill. 177; *Northwestern Yeast Co.* v. *Industrial Com.* 378 Ill. 195; *Puttkammer* v. *Industrial Com.* 371 Ill. 497.) However, it has also been held that the exact line of demarcation between liability and nonliability depends upon the particular circumstances of each case, and that no formula can be laid down which will solve every case. The facts that the accident happens upon a public highway and that the danger is one to which the general public is also exposed, are not conclusive if the employee, by reason of and in connection with his employment, is exposed to a greater degree to such risks because of his employment. (*Payne and Dolan*

v. *Industrial Com.* 382 Ill. 177; *City of Chicago* v. *Industrial Com.* 389 Ill. 592.) This requires a determination of whether the facts show the injuries suffered have a causal relation to his employment.

When respondent reached the premises of petitioner the truck he was to drive during the day was loaded and ready for use. The truck his son was to drive was standing in the street unloaded. It was necessary to place it at or near the loading platform before it could be loaded and used by the son in the course of his employment. It could be said this truck was in the street as a part of the premises of the employer, because the son undoubtedly would commence his employment that day by moving the truck to the loading platform. Respondent testifies he had many times moved the trucks of other employees so he could approach the loading platform. It seems it was customary in the course of their employment, when necessary to load their own vehicles, for employees to move trucks of others, or for the purpose of obtaining access to the loading platform. Both men spent the major portion of their working time during the day in driving their employer's trucks upon the public streets.

Can it be said as a matter of law that one of two employees, doing the same kind of work for the same employer, is without the benefit of the compensation law by the mere circumstance the accident happened upon an appliance customarily used by another employee? Is it the particular work being done at the time, or the general purpose to be accomplished, that controls the application of the law? The general rule is that a man's employment does not begin until he reaches the place where he is to work, or the scene of his duties, and does not continue after he has left. *Dambold* v. *Industrial Com.* 323 Ill. 377; *Shegart* v. *Industrial Com.* 336 Ill. 223; *Schafer* v. *Industrial Com.* 343 Ill. 573; *Landon* v. *Industrial Com.* 341 Ill. 51.

Just prior to the injury respondent had reached a place where, if his truck had been in the street, his work for the day would start, as during most of the day the street was a part of his working place. He did not report to an office, nor punch a clock. The location of the truck was the place where he started to work, whether on the street or on the premises of petitioner. The facts in this case are not as nearly parallel to those in *Payne & Dolan* v. *Industrial Com.* 382 Ill. 177, as to those in *City of Chicago* v. *Industrial Com.* 389 Ill. 592. In the *Payne & Dolan case* we laid down the test as follows: "The test is whether the employee, when injured, was at a place where, by reason of his employment, he was required to be, or where he is subjected, by reason of his employment, to a hazard to which the public is not exposed or to which he, by reason of his employment, is exposed peculiarly and to a greater degree than the public." In the *City of Chicago case,* among other things, we said: "The rationale to be deduced from all the cases is that the risks of the street may, depending upon the circumstances, become risks of the employment. Where, therefore, the proof establishes that the work of the employee requires him to be on the street to perform the duties of his employment, the risks of the street become one of the risks of the employment, and an injury suffered on the street while performing his duty has a causal relation to his employment, authorizing an award."

By reason of his employment Mueller was at a place where, at least occasionally, he was subjected to the risk of the street. The public was never subject to this risk, and hence respondent was subject to a risk to a greater degree than the public. The risk of being injured on a truck standing in the street occurred frequently to the respondent, but never to the general public. Respondent is therefore not barred from an award by anything said in the *Payne & Dolan case.*

On the other hand, the proof shows, without dispute, a large portion of his duties was performed on the street in driving a truck. If his truck was standing in the street in the morning he started his work there. If it became necessary he moved other trucks in the course of his employment. It is a fair inference he could help other employees by doing the same for them as he could for himself. Under the rationale of the *City of Chicago case* his injury would have a causal relation to his employment justifying an award. We think respondent was doing something he might reasonably have been required to do at the time he was injured. It was within the time of his employment because he did something which would enable the trucks to reach the loading platform, and he was at a place that was temporarily a part of the employer's premises. Under such circumstances the injury arose out of and in the course of his employment. *Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89.

It would place an unreasonably narrow construction upon the Workmen's Compensation Act to hold an injury occurring while assisting a co-employee in the same line of work either took the injured person out of the course of his employment, or caused an added peril to his work. He did the same thing many times to place his own truck at the loading platform, and could reasonably be expected in the course of his employment to do so for another, and the fact it was incidentally a convenience for another co-employee would not change the character of his work.

We think the judgment of the circuit court should be affirmed.

*Judgment affirmed.*