(No. 34993.—

C. A. DUNHAM COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(VIRGINIA M. JUNGELS, Plaintiff in Error.)

*Opinion filed January 23, 1959—Rehearing denied March 18, 1959.*

KLINGBIEL, J., dissenting.

O'BRIEN, BURNELL & PUCKETT, of Aurora, (WILSON D. BURNELL, and JOSEPH H. BARNETT, of counsel,) for plaintiff in error.

PEREGRINE, GIFFORD, MOORE & PEREGRINE, of Chicago, for defendant in error.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This court has allowed a writ of error to review a judgment of the circuit court of Kane County reversing a death benefit award of $9,250 under the Workmen's Compensation Act, entered by the Industrial Commission in favor of Virginia M. Jungels, herein referred to as petitioner, for the death of her father in an airplane crash allegedly arising out of and in the course of his employment by C. A. Dunham Company, herein referred to as respondent.

The sole issue is whether the death of an employee in a plane crash feloniously caused by a bomb explosion "arises out of" his employment, under the terms of the Workmen's Compensation Act, where the employee was traveling on the plane on company business at the employer's request.

The facts material to this inquiry are uncontroverted. On November 1, 1955, the decedent, John W. Jungels, a heating engineer, was requested by his employer, respondent C. A. Dunham Company, to book passage on United Air Lines flight No. 629, from Chicago, Illinois, to Seattle, Washington, pursuant to company business. Shortly after the takeoff following a scheduled stop at Denver, Colorado, an explosion occurred aloft, which caused the airplane to disintegrate and crash, and resulted in the death of all persons aboard. Subsequent investigation disclosed that an explosive device had been placed in the baggage of one of the

passengers, who boarded the plane at Denver, by her son, John Gilbert Graham, for the avowed purpose of causing the plane to crash, so as to collect his mother's insurance and to inherit her property. Graham was subsequently convicted and executed for the murder of his mother.

It was agreed by the attorneys herein, during the hearing before the arbitrator, that an accident of this character had happened only once in the history of aviation, that being in Canada. It further appears that petitioner, at the time of her father's death, was totally dependent upon him for her support, and that his earnings were in excess of $6,000 a year.

In determining whether the circuit court erred in setting aside the death benefit award to petitioner, the essential inquiry is whether the accident "arose out of" decedent's employment, since it is admitted that decedent at the time of his death was "in the course of" his employment. Those phrases are used conjunctively in the Workmen's Compensation Act (*Loyola University* v. *Industrial Com.*, 408 Ill. 139; *Scholl* v. *Industrial Com.*, 366 Ill. 588), and to authorize an award under the act it must be established that the accident not only occurred "in the course of" the employment, but that it also "arose out of" the employment. The statutory phrase "arising out of" points to the origin of the accident, so that to "arise out of" the employment an accident must have its origin in a risk incidental to the employment. *Pekin Cooperage Co.* v. *Industrial Com.*, 285 Ill. 31, 35; *Porter Co.* v. *Industrial Com.*, 301 Ill. 76; *Irwin-Neisler & Co.* v. *Industrial Com.*, 346 Ill. 89, 92; *Mazursky* v. *Industrial Com.*, 364 Ill. 445, 449; *Northwestern Yeast Co.* v. *Industrial Com.*, 378 Ill. 195, 200; *Payne and Dolan* v. *Industrial Com.*, 382 Ill. 177.

While it was originally stated that this risk must be peculiar to the work, and not connected with the neighborhood, the concept was expanded so that even if the general public is also exposed to the risk, if the employee, by reason

of his employment, is exposed to such risk to a greater degree, the accident is said to arise out of his employment. (*Payne and Dolan* v. *Industrial Com.*, 382 Ill. 177; *Hinckley & Schmitt* v. *Industrial Com.*, 391 Ill. 577.) Moreover, if the risk or hazard is so increased by the employment, it does not matter that the injury is unusual, or unexpected, or that it is not peculiar to the employment. *City of Chicago* v. *Industrial Com.*, 389 Ill. 592, 600; *Irwin-Neisler & Co.* v. *Industrial Com.*, 346 Ill. 89; *Jefferson Ice Co.* v. *Industrial Com.*, 404 Ill. 290, 295.

The difficulty of applying these guiding principles (*Payne and Dolan* v. *Industrial Com.*, 382 Ill. 177; *Ceisel* v. *Industrial Com.*, 400 Ill. 574), together with the trend of liberal construction of compensation statutes (53 Mich. L. Rev. 495; Riesenfeld, "40 Years of American Workmen's Compensation," 35 Minn. L. Rev. 525), has resulted in an irreconcilable maze of cases involving the "arising out of" clause, which appears in the compensation acts of some 41 States. (For an authoritative review of the Illinois cases, see I Angerstein, "Illinois Workmen's Compensation," Revised Edition, § 392-508 and Supplement.)

Insofar as we have been able to ascertain, there is no determinative precedent for the case at bar. In Illinois, the Appellate Court has merely inferred that the employee's injuries from escaping carbon monoxide on a plane on which he was traveling on company business were compensable under the Workmen's Compensation Act, by dismissing the employee's common-law action against the airline under former section 29 of the Workmen's Compensation Act. (*Schnell* v. *Nat'l Air Transport Corp.*, 296 Ill. App. 641.) The cases in other jurisdictions allowing compensation for the death of employees in plane crashes, while traveling on company business, involved plane crashes of unknown rather than felonious origin. *Constitution Indemnity Co.* v. *Shytles*, (5th Cir. 1931) 47 F.2d 441; *Green* v. *Heard Motor Co.* 224 La. 1078, 71 So.2d 897.

In the absence of a controlling precedent, therefore, the parties have quite properly made analogies to cases involving street and transportation risks by employees required to travel in connection with their work, and to cases involving felonious assaults upon employees, which categories have elements similar to those involved in the case at bar. We shall consider the tenor and scope of these categories in the Illinois case law and that of other States.

It has been held by this court and those of other States (100 A.L.R. 1055 *et seq.;* 80 A.L.R. 126 *et seq.*) that where employees, in the performance of their work, are exposed to the hazards of the street and to the hazards of automobile and railroad transportation more than the general public, such risks become risks of the employment, and that accidental injuries or death as a result of such risks "arise out of" such employment. *City of Chicago* v. *Industrial Com.,* 389 Ill. 592; *Illinois Publishing and Printing Co.* v. *Industrial Com.,* 299 Ill. 189; *Irwin-Neisler & Co.* v. *Industrial Com.,* 346 Ill. 89; *Swift & Co.* v. *Industrial Com.,* 350 Ill. 413; *Kennedy-VanSaun Corp.* v. *Industrial Com.,* 355 Ill. 519; *Porter* v. *Industrial Com.,* 352 Ill. 392; *Porter Co.* v. *Industrial Com.,* 301 Ill. 76; *Solar-Sturges Mfg. Co.* v. *Industrial Com.,* 315 Ill. 352.

In *Irwin-Neisler & Co.* v. *Industrial Com.,* 346 Ill. 89, where the employee sustained injuries when his automobile overturned on his way home from a town where he had attended to some business at the direction of his employer, the court, in rejecting the contention that the unusual manner of the accident precluded it from "arising out of" the employment, stated at p. 95: "As to the contention that the injury did not arise out of his employment there is little merit. Automobiles do not ordinarily turn over under circumstances such as are described by Sawyer in this case, but such an accident *is possible* as one of the risks of the business in which Sawyer was engaged and as incidental to it." (Italics ours.)

Vehicular accidents on streets and highways were also deemed to arise out of the employment where an advertising solicitor was killed in an automobile collision between the car driven by him and that driven by a third party, while on his way to make a call on behalf of his employer (*Illinois Publishing and Printing Co.* v. *Industrial Com.,* 299 Ill. 189); where the traveling salesman was killed when he lost control of a company car, which left the highway and struck a tree as a result of a flat tire (*Swift & Co.* v. *Industrial Com.,* 350 Ill. 413); and where an employee engaged as both engineer and salesman was killed when his car struck an enbankment and turned over. *Kennedy-Van-Saun Corp.* v. *Industrial Com.,* 355 Ill. 519.

In *Porter* v. *Industrial Com.,* 352 Ill. 392, where the employee's injuries were caused by the lurching of an interurban railway train on which the employee was riding enroute to attend a conference in obedience to his employer's instructions, the court specifically stated, at p. 396, that "the lurching of the car in which the defendant in error rode was one of the risks incidental to his employment * * * ."

Similarly, the courts have held that where employees are required by their duties to use the streets as pedestrians, death and injuries caused by vehicles are deemed to "arise out of" the employment. Compensation was allowed where a traveling salesman was struck by a car while crossing the street to board a street car to go to the office, after having stopped at home for lunch while enroute from a business mission (*Porter Co.* v. *Industrial Com.,* 301 Ill. 76); and where a salesman was struck by a street car while crossing the street to secure cigars for customers. *Solar-Sturges Mfg. Co.* v. *Industrial Com.,* 315 Ill. 352.

In none of the foregoing cases was there any reference or inquiry as to whether the accident resulted from the negligence or culpability of a third party in determining whether the accident "arose out of" the employment.

In addition to street risks from vehicles, this court has held that other types of street risks arise out of the employment and are compensable. In *City of Chicago* v. *Industrial Com.*, 389 Ill. 592, the court held that injuries sustained by a city inspector, required to travel the streets to investigate those holding certain city licenses, by stubbing his toe as he stepped up to the sidewalk, arose out of his employment. The court, after rationalizing all the street risk cases and distinguishing *Borgeson* v. *Industrial Com.*, 368 Ill. 188, noted hereinafter, concluded: "Where, therefore, the proof establishes that the work of the employee requires him to be on the street to perform the duties of his employment, the risks of the street become one of the risks of the employment, and an injury suffered on the street while performing his duty has a causal relation to his employment, authorizing an award."

Inasmuch as the transportation hazard herein is enhanced by a felonious act, we have reviewed the cases involving assaults by strangers upon employees required by their work to travel on the streets, highways and trains. Although assaults for purely personal reasons are not compensable, (*Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294,) the Illinois courts have held that such assaults may be risks of the employment and have frequently inferred from the circumstances a motive for the assault connected with the employment. *The Connor Co.* v. *Industrial Com.* 374 Ill. 105; *Scholl* v. *Industrial Com.* 366 Ill. 588; *Rosenfield* v. *Industrial Com.* 374 Ill. 176; *Jefferson Ice Co.* v. *Industrial Com.* 404 Ill. 290.

In *The Connor Co.* v. *Industrial Com.* 374 Ill. 105, where a traveling salesman who collected accounts for his employer was shot by a person whom he took in his car when he made calls for his employer, it was held that the assault arose out of decedent's employment. The court inferred a robbery motive, since the assailant had reason

to believe the deceased had his employer's money on his person.

The courts of other jurisdictions, however, have gone even further and have held that where the employees required to travel are assaulted by highwaymen and brawlers for unknown reasons, such assaults arise out of their employment on the ground that their work exposes them to the perils of such attacks. *Beem* v. *Lee Mercantile Co.* 337 Mo. 114, 85 S.W.2d 441; *Katz* v. *Kadans & Co.* 232 N.Y. 420, 134 N.E. 330, and cases cited; *Buckner* v. *Quick Seal Inc.* 233 Mo. App. 273, 118 S.W.2d 100.

The Missouri court in *Beem* v. *Lee Mercantile Co.* reasoned that the causal connection between the shooting of the salesman by a highwayman and the employment is not dependent on proof that the deceased was at the time protecting his own or his employer's property, but grows out of the fact that his traveling this road at that time was part of and reasonably connected with his employment. Similarly, in *Katz* v. *Kadans & Co.* 232 N.Y. 420, 134 N.E. 330, the court allowed compensation for the death of a dairy truck driver killed on the street in the course of selling and delivering milk, on the ground that the work involved exposure to perils of the street, "strange, unanticipated and infrequent though they may be," including the danger of being struck by brawlers who are sometimes out on the streets. In *Buckner* v. *Quick Seal Inc.,* 118 S.W.2d 100, the court held that an assault by a drunk on an employee, traveling on a train between different parts of the country in connection with his work of installing refrigeration machinery, arose out of the employment, since it subjected him to all perils on the train, including the danger of assault by ruffians who may be aboard such trains. The court stated, "The question is whether the employment exposed the employee to the risk by sending him on the train, and not whether such risk is common to all on the train."

That approach is consistent with cases holding that injury or death of traveling employees in hotel fires, and from gas poisoning in tourist cabins, arises out of the employment, irrespective of the cause of the calamity, and whether others are also exposed to such hazards, where the employee's work necessitates his seeking lodging at such places. *Souza's Case,* 316 Mass. 332, 55 N.E.2d 611, 613; *Standard Oil Co.* v. *Witt,* 283 Ky. 327, 141 S.W.2d 271; *Harivel* v. *Hall-Thompson Co.* 98 Conn. 753, 120 Atl. 603; *Lasear* v. *Anderson,* 99 Ind. App. 428, 192 N.E. 762.

Insofar as the instant case involves the enhancement of travel risks of an employee by a felonious act directed against another, the remarks of the court in *Foley* v. *Home Rubber Co.* 89 N.J.L. 474, 102 Atl. 1053, (affirming 99 Atl. 624) are singularly appropriate. Although the *Foley* case itself is distinguishable in that it involves a wartime situation, the court, in holding that the death of a salesman traveling on a ship which was illegally assaulted arose out of his employment, stated in 99 Atl. at p. 626:

"It is a matter of common knowledge that thousands of traveling salesmen travel daily in the course of their employment in cars propelled by steam, electricity and other propelling power, and therefore are subject to the risk of being injured or killed by reason of a collision or derailment or by cars going through an open draw or falling from a defective trestle, etc. The fact that the collision or derailment was caused by some malicious person with the design to injure a railroad company or some person in its employ would not operate to make an injury received by a salesman traveling in the car collided with or derailed any the less an injury the result of an accident arising out of the employment of such salesman than if such injury had been received by him as a result of the cars going through an open draw or falling from a defective trestle."

Respondent, however, in support of its contention that the crash did not arise out of decedent's employment, relies

upon the aforementioned case of *Borgeson* v. *Industrial Com.* 368 Ill. 188, where the court denied compensation for the death of a salesman shot by a stray bullet fired at a stranger. Although the court specifically distinguished those circumstances from the cases involving transportation hazards, as in the instant case, nevertheless, insofar as the transportation hazard herein was enhanced by the felonious act of another, the cases have elements of similarity.

However, we cannot agree with the conclusion of the court in the *Borgeson case* that where the employee's work requires him to travel the streets, only the traffic and transportation hazards are risks of employment and other street risks, such as from a stray bullet, are not deemed risks of employment, even though the employee's work requires him to be in that precise spot at that moment. In our judgment, under the tenor and scope of the case law reviewed herein, where the street becomes the milieu of the employee's work, he is exposed to *all* street hazards to a greater degree than the general public. (*City of Chicago* v. *Industrial Com.* 389 Ill. 592; *The Connor Co.* v. *Industrial Com.* 374 Ill. 105; *Beem* v. *Lee Mercantile Co.* (Mo.), 85 S.W.2d 441; *Katz* v. *Kadans & Co.* (N.Y.), 134 N.E. 330.) The risk of a stray bullet, though it may occur infrequently, is a risk of the street, just as is the risk of being struck by an automobile or street car. To deny compensation for injuries originating in one of those street risks on the ground that it is shared with the public, and to allow compensation for injuries originating in the other risk, is inconsistent. Hence, we cannot accept the reasoning of the court in the *Borgeson case,* or regard it as determinative precedent.

We note, furthermore, in sharp contrast, that the California court classified as a street risk the danger of being shot by a stray bullet where the employment requires the presence of the employee on the street. The court awarded compensation to an employee whose duties consisted in

installing refrigeration plants within a certain district, for injuries sustained from a stray bullet fired by a policeman at a fleeing criminal, while the employee was on the railroad station platform, after having completed an installation in that town. The essential causal connection between the employment and the injury existed in the fact that the employment required the employee's presence on the street and that the injury was caused by some human or mechanical instrumentality incident to the use of the street.

From this review of the relevant authorities, it is evident that for an accident to "arise out of" the employment it is no longer necessary that it originate in a risk peculiar to the employment, but only that the employment expose the employee to the same risk as other members of the public (*Ill. Publishing Co.* v. *Industrial Com.* 299 Ill. 189; *City of Chicago* v. *Industrial Com.* 389 Ill. 592); that the unusualness or infrequency of the accident does not preclude it from arising out of the employment, so long as it is possible as one of the risks of the employee's work (*Irwin-Neisler & Co.* v. *Industrial Com.* 346 Ill. 89; *Katz* v. *Kadans & Co.* 232 N.Y. 420, 134 N.E. 330; *Standard Oil Co.* v. *Witt,* 283 Ky. 327, 141 S.W.2d 271, 276); and that no distinction has been made as to whether the accident is due to mechanical failure, human negligence or felonious acts (*The Connor Co.* v. *Industrial Com.* 374 Ill. 105; *Foley* v. *Home Rubber Co.* 89 N.J.L. 474, 102 Atl. 1053, affirming 99 Atl. 624; *Frigidaire Corp.* v. *Industrial Acc. Com.* 103 Cal. App. 27, 283 Pac. 974; *Beem* v. *Lee Mercantile Co.* 337 Mo. 114, 85 S.W.2d 441; *Buckner* v. *Quick Seal Inc.* 233 Mo. App. 273, 118 S.W.2d 100), provided the employment exposes the employee to the risk, and the injury is not inflicted for personal reasons.

Analyzing the instant case in the light of these principles, it appears that since decedent's work required him to travel on the airplane, the plane became the milieu of his employment, and the hazard of a plane crash became a

risk of that employment, to which decedent was subjected because of the fact that he was directed to travel by plane. Decedent was killed when the plane exploded and crashed. ·While that explosion was feloniously caused, it was in no way personally directed against him; he was subjected to it only because his employment required him to be on that plane. If the explosion and crash had been caused by mechanical malfunction, however unusual, or by error on the part of the pilot, there would have been no question under the case law that the accident would be deemed to arise out of decedent's employment. There should be no distinction as to whether the explosion and crash were induced by mechanical failure, or by human error, or by human mischief directed against another—they are all possible risks of the transportation decedent was required by his employment to take.

In this connection, we reiterate the language in *Foley* v. *Home Rubber Co.,* which goes to the heart of this case, as appears from the parenthetical insertions completing the analogy: "The fact that the collision or derailment (or plane explosion and crash) was caused by some malicious person with a design to injure a railroad company or some person in its employ (or another passenger) would not operate to make an injury to a salesman traveling in the car (plane) collided with or derailed (or crashed) any the less an injury the result of an accident arising out of the employment of such salesman than if such injury had been received by him as a result of the cars going through an open draw or falling from a defective trestle." (Parenthetical insertions ours.)

Therefore, since the accident causing decedent's death had its origin in a transportation risk, be it from mechanical failure, or human error or mischief, the accident should properly be deemed to arise out of decedent's employment and was clearly compensable. Hence, it was error for the circuit court to set aside the death benefit of $9,250 awarded

petitioner by the Industrial Commission, and the judgment of the circuit court is hereby reversed and the award reinstated.

*Judgment reversed and award confirmed.*

Mr. JUSTICE KLINGBIEL, dissenting:

I cannot accept the opinion of the court or the judgment reached thereby. The cause of this accident falls entirely outside the class of causes contemplated by the Workmen's Compensation Act.

In its design to provide compensation for every injury arising out of the employment, regardless of fault, the statute requires that the employer's operations be instrumental in causing it: that some rational connection be shown between the injury and the work itself. It is not sufficient merely that the employee was present at the place of injury because of his employment. (*Borgeson* v. *Industrial Com.* 368 Ill. 188.) The injury must result from some risk peculiar to the work, not a kind of risk to which any other member of the public is also exposed. The test is found in the nature of the risk, not its magnitude; in its incidents, not its incidence; in qualitative factors, not quantitative ones.

The idea of the statute is to spread the risk of the employer's operations, not the risk of any stranger's negligent or criminal conduct. The fact that the decedent was in the course of his employment—*i.e.,* that the airplane trip was taken in pursuance of employment duties—tells us nothing about causes. If the work of an employee requires his presence in the factory, is an injury compensable which is caused by a bolt of lightning, or by a stray bullet from a nearby hold-up? If not, how does the fact that his work requires him to be on the street lend occupational causation to injury by a drunken driver?

An arbitrary result gains no force from the fact that citations are made to other arbitrary decisions. To see mere presence at a particular place as the circumstance out

of which an injury arises is to adopt the "but-for" theory which any first-year law student can refute. In concluding its exhaustive survey of the law the majority opinion says, in so many words, that the accident arose out of a transportation risk. Assuming the accuracy of the observation, I think that this alone should reveal the lack of connection with the employment. Neither the employee nor the Dunham Company was engaged in the transportation business. There was nothing the employer could do to make safe the conduct of public transportation operations, much less to eliminate the hazards of criminal conduct entirely unrelated to the conduct of either business. (I do not mean to imply that had Jungels been employed by the United Air Lines there would have been a sufficient causal connection with his employment.)

I can see little purpose in wordy attempts at providing justification for *nonsequiturs,* when a mechanical formula determined by working hours is apparently all that is required for compensability. Why not simply ascertain whether the employee was in the course of his employment at the time, award him compensation, and let it go at that? If we cannot save logic let us at least spare the English language.

The majority opinion has effectively eliminated the "arising-out-of" requirement, and has put the employer into the insurance business, at least to the extent of working hours. This was not the intent of the statute. (*Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294.) We have not yet converted the act of employing another into an absolute guaranty of his safety from any and all the vicissitudes of life.

The *Borgeson case* is a clear and logical determination of a fairly simple question. To overrule it with an opinion like that of the court in this case is to replace reason with nonsense.

I would affirm the judgment of the circuit court.