METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, Appellee, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Ruth Lindquist, Appellant).

First District (Workers' Compensation Commission Division)
No. 1—09—2546WC

Opinion filed February 22, 2011.—Rehearing denied March 30, 2011.

Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago (Michael Schneider, of counsel), for appellant.

Noble & Associates, P.C., of Naperville (Dennis Noble, Michael Mahay, and Lisa Barbieri, of counsel), for appellee.

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Presiding Justice McCullough and Justices Hudson and Stewart concurred in the judgment and opinion.

Justice Holdridge specially concurred, with opinion.

## OPINION

The claimant, Ruth Lindquist, appeals from an order of the circuit court finding that the injuries which she sustained on November 9, 2005, did not arise out of her employment with the Metropolitan Water Reclamation District of Greater Chicago (the District), and reversing the decision of the Illinois Workers' Compensation Commission (Commission) awarding her benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2004)). For the reasons that follow, we reverse the judgment of the circuit court and reinstate the decision of the Commission.

The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on October 31, 2006.

The 61-year-old claimant testified that she has been employed as an accounting clerk for the District for 13 years. Her primary job duties are clerical in nature and include using a computer and keyboard, ordering and moving supplies, and filing. She is also responsible for preparing deposit slips for checks received by the District and for depositing those checks in the account held by the District at Chase Bank on Michigan Avenue. The bank is about 1 1/2 blocks south and east of the District's office, which is located at 100 East Erie Street. The District does not direct what route she takes when making such deposits, and she typically walks east on Erie and then south on Michigan, which is the route she perceives to be the most direct. The claimant testified that she regularly travels to the bank to make

deposits two to three times per week, depending on the volume of checks received.

At approximately 3 p.m. on November 9, 2005, the claimant left her office and began walking toward the bank to deposit checks in the District's account. She walked east on Erie toward Michigan Avenue, crossed Erie in the middle of the block, and then stumbled while walking up an inclined driveway that had a "dip" of about six inches. According to the claimant, she tripped or lost her footing on the "dip" in the driveway and fell forward. She tried to break her fall with her hands and fractured both of her wrists. The claimant acknowledged that she did not fall as a result of any debris or defect in the pavement, nor did she trip on the high curb.

The claimant stated that she was taken by ambulance to the emergency room at Northwestern Memorial Hospital, where she underwent bilateral wrist X-rays that demonstrated she had sustained comminuted fractures of the distal radii with volar angulation of the fragments. The emergency room doctors applied long-arm casts that extended from her hands to just below her shoulders. The following day, she saw Dr. John McClellan, an orthopedic surgeon, who replaced the long-arm casts with shorter ones. Dr. McClellan also scheduled an external-fixation surgery for her left wrist, which was performed on November 14, 2005. He then performed the same procedure on her right wrist on December 2, 2005. She subsequently underwent physical therapy and was ultimately released to return to work on March 6, 2006. At the hearing, the claimant stated that she has pain and stiffness in both of her wrists, but continues to perform the same functions she had before the accident.

At the conclusion of the hearing, the arbitrator found that, although the claimant was injured while performing a task that was required by her work, the accident did not arise out of her employment because she had not established that her job duties exposed her to a risk greater than that faced by the general public. Accordingly, the arbitrator found that the claimant was not entitled to benefits under the Act.

The claimant sought review of the arbitrator's decision before the Commission. With one commissioner dissenting, the Commission found that the claimant's accidental fall on November 9, 2005, arose out of her employment. In support of this conclusion, the Commission relied on the fact that the claimant was injured while performing a required task in the middle of a work day. In addition, the Commission stated that, though it was unnecessary to reach the issue of whether the claimant was exposed to an "increased risk," her claim was compensable under this alternative analysis where she had proven

that she was regularly required to traverse the streets in order to make bank deposits on behalf of the District and, therefore, was exposed to the risk of the "dip" in the driveway with greater frequency than were members of the general public.

Based on the evidence presented and the stipulations of the parties, the Commission awarded the claimant temporary total disability (TTD) benefits for a period of $16^4/_7$ weeks from November 10, 2005, through March 5, 2006. The Commission also determined that the claimant had sustained a permanent partial disability (PPD) to the extent of 35% loss of use of her right and left hands and awarded her PPD benefits of $591.77 per week for a period of 143.5 weeks. Finally, the Commission awarded the claimant $4,358.15 for reasonable and necessary medical expenses.

The District filed a petition for judicial review of the Commission's decision in the circuit court of Cook County. The circuit court reversed the Commission's decision, finding that the claimant was not exposed to a risk greater than that faced by the general public. This appeal followed.

On appeal, the claimant argues that the circuit court erred in setting aside the decision of the Commission, where the evidence established that the accidental injuries she sustained on November 9, 2005, arose out of her employment. We agree.

To obtain compensation under the Act, a claimant must show by a preponderance of the evidence that he or she has suffered a disabling injury arising out of and in the course of his or her employment. 820 ILCS 305/2 (West 2004). Both elements must be present at the time of the claimant's injury in order to justify compensation. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483, 546 N.E.2d 603 (1989). Whether an injury arises out of and in the course of the claimant's employment is a question of fact to be resolved by the Commission, and we will not disturb its determination unless it is against the manifest weight of the evidence. *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 164, 731 N.E.2d 795 (2000). A finding of fact is contrary to the manifest weight of the evidence only where an opposite conclusion is clearly apparent. *Durand v. Industrial Comm'n*, 224 Ill. 2d 53, 64, 862 N.E.2d 918 (2006). The appropriate test is whether there is sufficient evidence in the record to support the Commission's finding, not whether this court might have reached the same conclusion. *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828, 833, 769 N.E.2d 66 (2002).

Injuries sustained on an employer's premises, or at a place where the claimant might reasonably have been while performing his duties, and while a claimant is at work, are generally deemed to have been

received in the course of the employment. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 57, 541 N.E.2d 665 (1989). Here, it is undisputed that the claimant's injuries were sustained in the course of her employment. At the time that she fell, the claimant was walking to the bank to make deposits on behalf of the District, which was a task required by her position. Thus, the sole issue is whether the claimant's injuries arose out of her employment.

The "arising out of" component refers to the origin or cause of the claimant's injury and requires that the risk be connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. *Caterpillar Tractor Co.*, 129 Ill. 2d at 58. Courts have recognized three general types of risks to which an employee may be exposed: (1) risks that are distinctly associated with the employment; (2) risks that are personal to the employee; and (3) neutral risks that do not have any particular employment or personal characteristics. *Potenzo v. Illinois Workers' Compensation Comm'n*, 378 Ill. App. 3d 113, 116, 881 N.E.2d 523 (2007) (citing *Illinois Institute of Technology Research Institute*, 314 Ill. App. 3d at 162).

In this case, the claimant was injured when she stumbled and fell on a "dip" in a driveway that intersected a public sidewalk. There is no evidence that the claimant suffered from a physical condition that caused her to fall, nor is the risk of such an accident distinctly associated with her employment. Accordingly, the risk that the claimant would be injured as a result of a fall while traversing a public sidewalk and commercial driveway was neutral in nature.

Injuries resulting from a neutral risk generally do not arise out of the employment and are compensable under the Act only where the employee was exposed to the risk to a greater degree than the general public. *Illinois Institute of Technology Research Institute*, 314 Ill. App. 3d at 163. Such an increased risk may be either qualitative, such as some aspect of the employment which contributes to the risk, or quantitative, such as when the employee is exposed to a common risk more frequently than the general public. *Potenzo*, 378 Ill. App. 3d at 117 (citing *Illinois Consolidated Telephone Co. v. Industrial Comm'n*, 314 Ill. App. 3d 347, 353, 732 N.E.2d 49 (2000) (Rakowski, J., specially concurring)).

Under the "street risk" doctrine, where the evidence establishes that the claimant's job requires that she be on the street to perform the duties of her employment, the risks of the street become one of the risks of the employment, and an injury sustained while performing that duty has a causal relation to her employment. *Potenzo*, 378 Ill. App. 3d at 118 (citing *C.A. Dunham Co. v. Industrial Comm'n*, 16

Ill. 2d 102, 111, 156 N.E.2d 560 (1959)); see also *City of Chicago v. Industrial Comm'n*, 389 Ill. 592, 601, 60 N.E.2d 212 (1945); *Mueller Construction Co. v. Industrial Board of Illinois*, 283 Ill. 148, 158-59, 118 N.E. 1028 (1918). In such a circumstance, it is presumed that the claimant is exposed to risks of accidents in the street to a greater degree than if she had not been employed in such a capacity, and the claimant will be entitled to benefits under the Act. *City of Chicago*, 389 Ill. at 601.

The undisputed evidence establishes that the claimant was required to traverse the public streets and sidewalks to make bank deposits on behalf of the District. As such, the hazards and risks inherent in the use of the street became the risks of her employment. A six-inch "dip" in a commercial driveway is a street hazard, and though the risk of tripping and falling on such a hazard is a risk faced by the public at large, it was a risk to which the claimant, by virtue to her employment, was exposed to a greater degree than the general public. See *C.A. Dunham Co.*, 16 Ill. 2d at 111.

Moreover, even if the claimant were required to present proof that she faced an increased risk, she has met that burden. The claimant testified at the arbitration hearing that she was required to use the public way in making the bank deposits two or three times each week. The Commission specifically found that this evidence established that the claimant was exposed to the risk of the "dip" in the driveway with greater frequency than members of the general public.

Based on the record presented, the manifest weight of the evidence established that the injuries sustained by the claimant on November 9, 2005, arose out of and in the course of her employment with the District, and, as a consequence, she is entitled to benefits under the Act. We, therefore, reverse the judgment of the circuit court and reinstate the decision of the Commission which awarded the claimant benefits under the Act.

Judgment reversed; award reinstated.

JUSTICE HOLDRIDGE, specially concurring.

I concur. I write separately to note my concurrence only with the majority's holding that the claimant has met her burden of showing that she was exposed to a risk greater than the general public. As the majority observed, the claimant testified at the arbitration hearing that she was required to use the sidewalk where the "dip" was located in making the bank deposits two or three times every week. The Commission specifically found that this evidence established that the claimant was exposed to the risk of the "dip" in the driveway with greater

frequency than members of the general public. As this finding by the Commission is not against the manifest weight of the evidence, the award of compensation should be affirmed on that basis alone.

As this case is simply one where the Commission found that the claimant was exposed to risk greater than the general public by virtue of the number of times she was required by her employment to be exposed to the sidewalk defect, I see no need to go further with analysis of the so-called "street risk" doctrine. The doctrine, which is in essence the "traveling employee" doctrine (see *Potenzo v. Illinois Workers' Compensation Comm'n*, 378 Ill. App. 3d 113, 119 (2007)), does nothing to clarify what a claimant must do to establish that his or her injuries arose out of his or her employment. The concept that merely because an employee's employment places him on the street there is a "presumption" that all the hazards of the street are now hazards of his employment is a particularly unappealing one. Is this presumption rebuttable? Does this presumption not impermissibly shift the burden to the employer to show that the claimant is *not* entitled to benefits? Should the "street risk" doctrine now also be expanded, as in the instant matter, to a new "sidewalk risk" doctrine? These are questions which do not need to be addressed, if we confine our analysis to whether the claimant can establish that her employment, either quantitatively or qualitatively, exposed her to a risk greater than that of the general public. *Potenzo*, 378 Ill. App. 3d at 117. Here, the Commission determined that the claimant had met her burden of proof, without any presumption. I would find that the Commission's decision was not against the manifest weight of the evidence. I would affirm the Commission on that basis alone.