# Illinois Official Reports

## Appellate Court

*Nee v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 132609WC

| | |
|---|---|
| Appellate Court Caption | THOMAS A. NEE, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (The City of Chicago, Appellee). |
| District & No. | First District, Workers' Compensation Commission Division<br>Docket No. 1-13-2609WC |
| Filed | February 27, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Workers' Compensation Commission's denial of a city plumbing inspector's claim for the knee injury he suffered when he tripped on a curb while heading to his next inspection assignment was reversed and remanded to the Commission, since there was no evidence showing that claimant had some condition that caused him to fall, but, rather, the risk of traversing the curb was neutral, the risk was not distinctly associated with his employment as a plumbing inspector, and although all members of the public are confronted with the risk of such curbs, a traveling employee such as claimant is exposed to the risk while working and is presumed to have been exposed to a greater risk than the general public; therefore, the injury claimant suffered when he tripped was sustained in the course of his employment and arose out of his employment as a traveling plumbing inspector for the city. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-51321; the Hon. Eileen O'Neil Burke, Judge, presiding. |
| Judgment | Circuit court judgment reversed; Commission decision reversed; cause remanded to the Commission. |

Counsel on Appeal

Dennis M. Lynch, of Healy Law Firm, of Chicago, for appellant.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kaspar, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee.

Panel

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Hudson, Harris, and Stewart concurred in the judgment and opinion.

## OPINION

¶ 1    The claimant, Thomas A. Nee, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2008)), seeking benefits for injuries he received while working for the City of Chicago (City). He now appeals from the circuit court order which confirmed the decision of the Illinois Workers' Compensation Commission (Commission) finding that he failed to prove that he sustained an injury which arose out of and in the course of his employment with the City. For the following reasons, we reverse the judgment of the circuit court, reverse the decision of the Commission, and remand the cause to the Commission for further proceedings.

¶ 2    The following factual recitation is taken from the evidence adduced at the arbitration hearing.

¶ 3    At all times relevant, the claimant was a plumbing inspector in the employ of the City. His duties required him to travel throughout the City by car to inspect the plumbing in both residential and commercial buildings. The claimant testified that he reported to work each day at the filtration plant and received the day's inspection assignments. He inspected approximately five to seven sites each day, driving from location to location. The plaintiff contends, and the City admits, that he was a traveling employee.

¶ 4    The claimant testified that, on July 27, 2009, after finishing an inspection at 2007 North Sedgwick, he "tripped on a curb" and fell as he was walking back to his car to go to his next assignment. During the arbitration hearing, the claimant testified that he was not sure if the curb was level with the sidewalk, but he thought that it might have been higher. He was asked: "So you believe that the curb may have been higher than the sidewalk and that's where you tripped?" He responded: "Yes, I do." However, on cross-examination, the following exchange took place:

> "Q. On July 27, 2009, you stated that you don't really recollect the curb. Is that correct? Do you remember the street and the condition of the street in any way?"
>
> CLAIMANT: What I don't recollect is I didn't take a picture or even look, stare at the curb, to tell you if it was high or cracked. I don't know. I didn't take a look[;] all I know I tripped on it and I fell."

¶ 5 The claimant testified that, when he tripped, he twisted his knee and felt immediate pain. He stated that he reported the incident to his supervisor, Dan Nederbo, the City's assistant chief plumbing inspector, and that Nederbo directed him to go to Mercy Works, the City's occupational health clinic.

¶ 6 The claimant reported to Mercy Works, complaining of knee pain. The Mercy Works record of that visit reflects that the claimant gave a history of his injury which was consistent with his testimony at arbitration. The claimant was treated by Dr. Edward Bleier, who diagnosed him as suffering from an acute right-knee sprain. The claimant was given a knee brace and pain medication. He was advised to use ice packs at home and instructed to return to the clinic for follow-up treatment. Additionally, the claimant was restricted to only sit-down duties.

¶ 7 The claimant returned to Mercy Works on July 30, 2009, and August 6, 2009, as instructed. On each visit, he reported no improvement and complained of significant pain in his right knee.

¶ 8 On August 6, 2009, an MRI scan of the claimant's right knee was taken, revealing cartilaginous thinning in all three compartments.

¶ 9 The claimant next saw Dr. Bleier at Mercy Works on August 12, 2009. The doctor diagnosed an acute strain to the right knee with degenerative joint disease.

¶ 10 On August 14, 2009, the claimant sought treatment from Dr. Christopher Mahr, an orthopedic surgeon. The records of that visit reflect that the claimant gave a consistent history of having tripped at work, twisting his knee. Dr. Mahr diagnosed the claimant as suffering from a Grade I medial collateral ligament strain.

¶ 11 The claimant remained under the care of Dr. Mahr from August 2009 through November 2009. During that period, the claimant continued to complain of pain, and Dr. Mahr administered corticosteroid injections and a synovisc injection. When Dr. Mahr examined the claimant on October 22, 2009, he indicated that the claimant may be a candidate for a total knee arthroplasty in the future.

¶ 12 The claimant returned to Mercy Works on October 23, 2009, and November 3, 2009. Examinations of the claimant on those dates revealed tenderness at the medial joint line and limited flexion due to pain. The claimant was instructed to attempt to return to work on November 9, 2009.

¶ 13 The claimant returned to work on November 9, 2009, as instructed and continued working as a plumbing inspector for the City until his retirement on June 30, 2011.

¶ 14 At the arbitration hearing, the claimant testified that his right knee continues to bother him, especially when he climbs stairs, walks long distances, stands for long periods, squats, or uses a ladder. He stated that he uses ice packs, hot baths and ibuprofen for relief.

¶ 15 Following the hearing, the arbitrator found that the claimant suffered injuries as the result of an accident that arose out of and in the course of his employment with the City on July 27, 2009. The arbitrator awarded the claimant $14^5/_7$ weeks of temporary total disability (TTD) benefits and 16.125 weeks of permanent partial disability (PPD) benefits for the permanent loss of use of his right leg to the extent of 7.5%.

¶ 16 The City filed for a review of the arbitrator's decision before the Commission. In a unanimous decision, the Commission reversed the arbitrator, finding that the claimant failed to prove that he sustained accidental injuries which arose out of and in the course of his

employment with the City. Consequently, the Commission denied the claimant benefits under the Act.

¶ 17    The claimant sought a judicial review of the Commission's decision in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and this appeal followed.

¶ 18    The claimant argues that the Commission's finding that he failed to prove that he sustained accidental injuries which arose out of and in the course of his employment with the City on July 27, 2009, is against the manifest weight of the evidence. We agree.

¶ 19    The claimant in a workers' compensation case has the burden of proving, by a preponderance of the evidence, all of the elements of his claim, including proof that he suffered an accident which arose out of and in the course of his employment. 820 ILCS 305/2 (West 2008); *Metropolitan Water Reclamation District of Greater Chicago v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 1010, 1013 (2011). Both elements must be present at the time of the claimant's injury in order to justify compensation. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483 (1989). Whether an injury arose out of and in the course of a claimant's employment is a question of fact to be resolved by the Commission, and its determination will not be disturbed on review unless it is against the manifest weight of the evidence. *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 164 (2000). For a finding of fact to be against the manifest weight of the evidence, a conclusion opposite to the one reached by the Commission must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992). Although we are reluctant to disturb a factual determination made by the Commission, we will not hesitate to do so when the clearly evident, plain, and undisputable weight of the evidence compels an opposite conclusion. *Dye v. Illinois Workers' Compensation Comm'n*, 2012 IL App (3d) 110907WC, ¶ 10.

¶ 20    Injuries sustained at a place where a claimant might reasonably have been while performing his work duties are deemed to have been received in the course of his employment. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 57 (1989). In this case, it is undisputed that the claimant's injuries were sustained in the course of his employment with the City. He twisted his right knee when he tripped over a curb as he walked to his car to go to an inspection assignment. From the claimant's testimony, it is clear that the City was aware that he traveled to multiple inspection sites daily, driving by car from one to another. The City's protestations to the contrary notwithstanding, no reasonable argument can be made that the claimant's conduct in traversing a curb as he walked to his car was neither reasonable nor foreseeable. The only legitimate issue for analysis in this case is whether the claimant's injuries arose out of his employment.

¶ 21    For an injury to "arise out of" the employment, its origin must be in some risk connected with, or incidental to, the employment so as to create a causal connection. *Caterpillar Tractor Co.*, 129 Ill. 2d at 58. There are three general types of risks to which an employee may be exposed: (1) risks that are distinctly associated with the employment: (2) risks that are personal to the employee; and (3) neutral risks that do not have any particular employment or personal characteristics. *Potenzo v. Illinois Workers' Compensation Comm'n*, 378 Ill. App. 3d 113, 116 (2007) (citing *Illinois Institute of Technology Research Institute*, 314 Ill. App. 3d at 162).

- 4 -

¶ 22      In this case, the claimant tripped on a curb. There is no evidence in the record tending to show that the claimant suffered from some physical condition which caused him to fall. Nor is the risk associated with traversing a curb distinctly associated with employment as a plumbing inspector. Accordingly, the risk associated with his traversing a curb is neutral in nature. See *Metropolitan Water Reclamation District of Greater Chicago*, 407 Ill. App. 3d at 1014.

¶ 23      The determination of whether an injury suffered by a traveling employee, such as the claimant in this case, arose out of and in the course of his employment is governed by different rules than are applicable to other employees. *Hoffman v. Industrial Comm'n*, 109 Ill. 2d 194, 199 (1985). However, the fact that a claimant is a traveling employee does not relieve him of the burden of proving that his injury arose out of his employment. *Hoffman*, 109 Ill. 2d at 199.

¶ 24      Injuries resulting from a neutral risk, such as the injury here, do not arise out of the employment and are not compensable under the Act unless the employee was exposed to the risk to a greater degree than the general public. *Illinois Institute of Technology Research Institute*, 314 Ill. App. 3d at 163. The increased risk may be either qualitative, that is, when some aspect of the employment contributes to the risk; or quantitative, such as when the employee is exposed to the risk more frequently than the general public. *Metropolitan Water Reclamation District of Greater Chicago*, 407 Ill. App. 3d at 1014.

¶ 25      Nothing in the record before us suggests that some aspect of the claimant's employment contributed to the risk of traversing a curb. Although there is evidence that the claimant carried a clipboard while performing plumbing inspections, there is no evidence that carrying a clipboard caused, or contributed to, his tripping on the curb. Further, there is nothing in this record to distinguish the curb on which the claimant tripped from any other curb. As noted earlier, although the claimant testified that the curb may have been higher than the sidewalk, he readily admitted that he did not know. We are left then with the question of whether the claimant was exposed to the risk of tripping on a curb more frequently than the general public.

¶ 26      The risk of tripping on a curb is a risk to which the general public is exposed daily. Under the "street risk" doctrine, however, when, as in this case, the claimant's job requires him to travel the streets, the risks of the street become one of the risks of his employment. *Potenzo*, 378 Ill. App. 3d at 118 (citing *C.A. Dunham Co. v. Industrial Comm'n*, 16 Ill. 2d 102, 111 (1959)); see also *Metropolitan Water Reclamation District of Greater Chicago*, 407 Ill. App. 3d at 1014-15. As our supreme court held in *C.A. Dunham Co.*, 16 Ill. 2d at 111, "where the street becomes the milieu of the employee's work, he is exposed to all street hazards to a greater degree than the general public."

¶ 27      No doubt curbs, and the risk attendant to traversing them, confront all members of the public. *Caterpillar Tractor Co.*, 129 Ill. 2d at 62. However, when a traveling employee, such as the claimant in this case, is exposed to the risk while working, he is presumed to have been exposed to a greater degree than the general public. *City of Chicago v. Industrial Comm'n*, 389 Ill. 592, 601 (1945); see also *C.A. Dunham Co.*, 16 Ill. 2d at 111; *Mlynarczyk v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120411WC; *Metropolitan Water Reclamation District of Greater Chicago*, 407 Ill. App. 3d at 1014-15.

¶ 28      Having been exposed to the risk of traversing a curb to a greater degree than a member of the general public by virtue of his status as a traveling employee at the time of his accident,

the injury which the claimant suffered when he tripped over the curb was sustained not only in the course of his employment, it also arose out of his employment with the City.

¶ 29 The foregoing analysis leads us to conclude that the Commission's decision denying the claimant benefits under the Act by reason of his failure to prove that he sustained accidental injuries on July 27, 2009, which arose out of his employment with the City is against the manifest weight of the evidence. Consequently, we reverse the circuit court's judgment confirming the Commission's decision, reverse the Commission's decision, and remand this matter to the Commission for further proceedings consistent with this opinion.

¶ 30 Circuit court judgment reversed; Commission decision reversed; cause remanded to the Commission.