2020 IL App (3d) 190529WC-U
No. 3-19-0529WC
Order filed September 29, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| TODD WERNEBURG, | ) | Appeal from the Circuit Court |
| | ) | of Peoria County. |
| Appellant, | ) | |
| | ) | |
| v. | ) | No.  19-MR-194 |
| | ) | |
| THE ILLINOIS WORKERS' | ) | |
| COMPENSATION COMMISSION, | ) | Honorable |
| | ) | Mark E. Gilles, |
| (George Young & Sons, Appellee). | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hoffman, Cavanagh, and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Commission's decision to deny claimant benefits under the Workers' Compensation Act by reason of claimant's failure to prove that he suffered an accident which arose out of and in the course of his employment was not against the manifest weight of the evidence.

¶ 2    Claimant, Todd Werneburg, appeals from the judgment of the circuit court of Peoria County confirming a decision of the Illinois Workers' Compensation Commission (Commission) denying his application for benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1

*et seq.* (West 2014)). The Commission found that claimant failed to establish that he sustained an accident arising out of and in the course of his employment while working for respondent, George Young & Sons. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On September 16, 2015, claimant filed an application for adjustment of claim seeking workers' compensation benefits for injuries he allegedly sustained while in the employ of respondent. In particular, claimant asserted that while lifting a piece of steel at work on May 12, 2015, he suffered a hernia and injuries to his back and the "man as a whole." The matter proceeded to an arbitration hearing pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2014)) before arbitrator Melinda Rowe-Sullivan. The following factual recitation is taken from the evidence presented at that hearing, which was held on April 20, 2018.

¶ 5      Claimant was employed by respondent as a "union journeyman," working as a sandblaster and painter. On May 12, 2015, claimant and his foreman, Eric Young, were sandblasting cooling plates. After sandblasting one plate, claimant attempted to flip the plate to sandblast the other side. Claimant explained:

> "There was two metal plates [*sic*]. One of them was larger. And I believe the larger one weighed anywhere in excess of 3 to 500 pounds.
>
> I mean, I don't know for sure. But between the two of us—I went to lift—I thought it was a smaller one—and it wasn't, because my vision was impaired due to the sandblasting helmet and the equipment you must wear while you're sandblasting.
>
> I attempted to pick it up. I got it halfway in the air, couldn't flip it. So I set it back down again, and then called for Eric.

He came in—Eric Young—and we then flipped it. But by the time I got it back in

the air again, I felt my back give out on me, a sharp pain shoot down my back, and then I

had sharp, shooting, burning pains going up and down my leg—my left leg."

Claimant stated that he "took a breather," but was able to finish sandblasting the plate. Claimant testified that the following morning, he sought medical treatment from Candy Johnson, a physician assistant at UnityPoint Health, due to pain in the "pelvic region" from the lower abdomen to the lumbar area with radiation down the left leg. Claimant returned to work after seeking medical treatment on May 13, 2015. However, by May 20, 2015, he was no longer able to perform his duties. At that time, he notified his employer about the accident and followed up at UnityPoint Health. He was also sent by respondent to the Illinois Work Injury Resource Center (IWIRC).

¶ 6    Claimant testified that he was initially treated for a hernia. Following hernia surgery, he continued to experience pain, so he was referred to Midwest Orthopaedics for low-back treatment. Conservative treatment failed, so, in August 2016, Dr. Patrick O'Leary performed a lumbar fusion at L5-S1. Following back surgery, claimant participated in physical therapy and, in May 2017, he completed a functional capacity evaluation. Dr. O'Leary subsequently imposed permanent restrictions and released claimant from his care. In June 2017, claimant started looking for work, but has yet to find a job. A log of the employers to whom claimant applied was admitted at the arbitration hearing. Claimant testified that the back surgery relieved him of the pain that was radiating down his leg, but he still experiences pain in the lower spine. At the time of the arbitration hearing, claimant was treating at the Illinois Regional Pain Institute.

¶ 7    Claimant acknowledged that prior to the May 2015 injury, he received medical treatment for various conditions. For instance, claimant testified that he presented to UnityPoint Health on

April 23, 2015, with left hip discomfort related to a workout injury. The condition subsided prior to the May 2015 injury. In addition, claimant presented to Midwest Orthopaedics in 2012 with complaints of low back pain. At that time, claimant was treated with injections which alleviated his pain. Claimant denied having any low-back problems from 2013 through May 12, 2015.

¶ 8    On cross-examination, claimant acknowledged that he did not tell medical personnel that his injury was work related until after he was diagnosed with a hernia. When asked whether he told Dr. O'Leary in July 2015, when Dr. O'Leary first treated him, that he never had any prior back problems, claimant responded that he told Dr. O'Leary that he had no back problems "that persist[ed]." On further cross-examination, claimant was asked whether he told Dr. Avi Bernstein, respondent's independent medical examiner, that he had not had any prior back problems. Claimant responded that he did not remember speaking to Dr. Bernstein. Claimant could also not recall whether he was involved in a motor-vehicle accident in 2006, whether he treated with Johnson in 2011 for complaints of headaches, neck pain, and back pain following an altercation with his neighbor, and whether he received L5-S1 facet injections late in 2012. Claimant was also asked whether he pleaded guilty to a charge of theft in 2010. Claimant's attorney objected on relevancy grounds, but the arbitrator overruled the objection. Claimant responded that he did not remember the event.

¶ 9    George Eric Young, III testified that in May 2015, he was a foreman for respondent and that he worked for the local painter's union. On the date of the alleged accident, Young was claimant's direct supervisor. Young explained that he and claimant were sandblasting tanks that had heavy plates that can be removed. After flipping one of the plates, claimant told Young that he hurt his back and his groin. Young noted that claimant was "gimping around at the time" and

that when claimant showed up for work the following morning, he was "gimping even more." Young thought that the "gimping" was going to subside in a couple of days, but it seemed like it was worsening. On cross-examination, Young testified that claimant came to his home the morning after the accident and they drove to work together. Young further testified that claimant showed up for work for several more days, although Young stated that he did all the labor because claimant was hurt.

¶ 10    The medical records admitted into evidence establish that on March 18, 2011, claimant presented to Johnson with complaints of a headache, neck pain, and back pain after being involved in an altercation with a neighbor four days earlier. An MRI of the cervical spine showed degenerative changes but no disc herniation or spinal stenosis. Johnson diagnosed low back pain (lumbago), cervical strain, and headache. Claimant saw Johnson on June 26, 2012, with complaints of "joint discomfort throughout body, worse with knees and hands." Johnson diagnosed carpal tunnel syndrome and generalized osteoarthritis.

¶ 11    On October 5, 2012, claimant saw Dr. Amod Sureka at the Midwest Orthopaedic Center upon referral from Johnson. Claimant reported a one-year history of neck pain and low back pain. Dr. Sureka recommended therapy, medication, and a lumbar bone scan. The bone scan showed "increased uptake" at the right L5-S1 facet joint and some facet arthropathy at the left L5-S1 facet joint. Dr. Sureka administered a series of bilateral L5 and S1 facet joint injections.

¶ 12    Claimant saw Johnson on November 18, 2014, for a routine examination. At that time, claimant denied any complaints or concerns and reported that he was doing well. Johnson's diagnoses included generalized osteoarthritis, headache, and low-back pain. Claimant next saw Johnson on April 23, 2015, with complaints of rectal bleeding. He also reported left hip discomfort,

which he attributed to a new workout regimen. Johnson prescribed suppositories and instructed claimant to follow up in one to two weeks if symptoms persisted. Claimant underwent X rays of the left hip and lumbosacral spine on May 13, 2015. The X ray of the hip showed minimal osteoarthritic changes. The X ray of the lumbosacral spine showed advanced degenerative disc disease at L5-S1 and multilevel endplate depression of mild severity. The report of the lumbosacral spine X ray stated that the film was indicated because of "[l]eft hip pain radiating to the groin for the last one week. Possible radiculopathy. No trauma." The radiologist recommended an MRI for further evaluation of the lumbosacral spine.

¶ 13    Claimant returned to Johnson's office on May 20, 2015, with complaints of suprapubic pain with radiation across the lower abdomen and down the left groin and burning in the left thigh. Claimant reported the symptoms began a "few day ago" with "worsening past 1-2 days." Johnson's notes reflect that claimant denied any injury and that he told the "rooming staff" that "he had lifted some metal; denied was at work." Johnson diagnosed abdominal pain and suprapubic pain. An ultrasound indicated that claimant likely had a right femoral hernia and a left inguinal hernia. Johnson's office scheduled a surgical consultation for the hernia. When claimant was notified of the appointment, he told the nurse that his injury "happened at work." The nurse noted that claimant "did not share this info *** when he was seen at our office." Claimant was then referred to IWIRC for further treatment.

¶ 14    Claimant was seen at IWIRC on May 21, 2015, by Dawn Korf, a certified physician assistant. Claimant told Korf that the injury occurred on May 12, 2015. In particular, he related that while sandblasting, he attempted to pick up a piece of heavy steel to flip it when he felt a sharp pain in the lower groin bilaterally with shooting pain down the left leg. Initially, claimant thought

it was a pulled muscle and continued working. However, each day the pain increased "and encompassed the lower abdomen." Korf diagnosed a right femoral hernia and a left inguinal hernia and recommended a surgical consultation.

¶ 15    On May 29, 2015, claimant underwent an MRI of the lumbar spine. The report of the MRI stated that it was indicated because of "[c]hronic low backache, pain in the left upper inner thigh since May 12, 2015," and "[a]dvanced degenerative changes noted on the spinal radiograph." The MRI revealed mild multilevel degenerative changes in the spine most prominent at L5-S1, where there was disc extrusion with severe left neural foraminal stenosis. Also on May 29, 2015, claimant saw Dr. Jayaraj Salimath for his abdominal and groin pain. Claimant told Dr. Salimath that he felt a pull in his left groin and thigh area on May 12, 2015, when he was moving a piece of steel at work. Dr. Salimath diagnosed a bilateral inguinal hernia, a right femoral hernia, prostatitis, and left cryptorchidism. He recommended a laparoscopic bilateral hernia repair.

¶ 16    Claimant was seen by Dr. O'Leary of Midwest Orthopaedic Center on July 1, 2015. Dr. O'Leary's notes reflect that claimant described an injury at work on May 12, 2015. Specifically, he stated that he was sandblasting cooling units when he reached down to pick up a piece of steel to flip it. When he lifted it, he felt a pull in his back and lower groin and experienced severe low back pain. He tried to keep working, but continued to have groin, back, and shooting pains. Claimant told Dr. O'Leary that, prior to this incident, "he never had back pain or nothing that has caused him to get medical attention such as this." Dr. O'Leary diagnosed L5-S1 disc disease, left L5-S1 disc herniation, and leg pain, left greater than right, with back and groin pain. Regarding causation, Dr. O'Leary wrote: "To me based on his history, something occurred when he was going to flip those units after sandblasting them. This is a work-related condition in my opinion. He has

a condition that probably pre-existed, that is the degenerative disk, but I suspect he may have an acute disk finding at L5-S1." Dr. O'Leary imposed work restrictions and recommended physical therapy and epidural steroid injections.

¶ 17    Dr. Salimath performed a laparoscopic bilateral groin exploration of claimant on July 2, 2015. Dr. Salimath found no evidence of either an inguinal or a femoral hernia. On July 27, 2015, claimant followed up with Dr. Salimath postoperatively. At that time, claimant reported no groin pain or tenderness, so Dr. Salimath advised claimant to return on an as-needed basis.

¶ 18    Thereafter, claimant continued to treat at Midwest Orthopaedic Center, but conservative measures proved unsuccessful. Accordingly, on August 12, 2016, Dr. O'Leary performed an anterior lumbar interbody fusion at L5-S1. The indication for the procedure provides as follows:

> "[Claimant] is a 51-year-old male. He got hurt at work last year. He initially thought he had a hernia, but he also developed back pain and leg pain, as related to his work accident. We tried various conservative measures, including some physical therapy. He had steroid injections and a number of different treatments. Unfortunately, despite this, he continued to have lifestyle-limiting pain. The pain was persistent in his back and down his left leg, also in the right side. Despite conservative measures, he solicited further care to help achieve some improvement in his physical condition and his pain. Because it is a large disk protrusion, centrally as well as left-sided, and foraminal stenosis, I thought he was best indicated for an L5-S1 anterior lumbar interbody fusion."

Post operatively, claimant continued to treat with Dr. O'Leary and underwent physical therapy. In April 2017, Dr. O'Leary referred claimant for chronic pain management and recommended a functional capacity evaluation (FCE).

¶ 19    On May 8, 2017, claimant underwent the FCE. Claimant demonstrated the ability to perform within the medium physical-demand category. That same day, claimant was discharged from physical therapy. Claimant saw Dr. O'Leary on May 18, 2017. At that time, Dr. O'Leary noted that claimant was nearly a year from surgery and X rays showed a solid fusion with no motion on flexion-extension. Dr. O'Leary determined that claimant was at maximum medical improvement and released him to return to work at the medium functional capacity with occasional lifting of 20 to 50 pounds, frequent lifting of 10 to 25 pounds, and constant lifting of 10 pounds. Thereafter, claimant began treating at the Illinois Regional Pain Institute for low-back pain.

¶ 20    Evidence depositions from Dr. O'Leary and Dr. Bernstein were admitted at the arbitration hearing. Dr. O'Leary opined that claimant's May 12, 2015, accident aggravated an underlying degenerative condition and that the surgery performed in August 2016 was related to the May 12, 2015, accident. Dr. O'Leary explained that claimant had a preexisting back disorder, so the accident "didn't cause his L5-S1 disc to wear out to the degree that it had, but something in the process of his lifting this caused him to become symptomatic." On cross-examination, Dr. O'Leary agreed that his causation opinions were based solely on the history provided to him by claimant.

¶ 21    Dr. Bernstein, a board-certified orthopaedic surgeon, conducted an independent medical examination of claimant on March 27, 2017. Claimant told Dr. Bernstein that he was working as a union painter and sandblaster on May 12, 2015. On that date, as claimant attempted to flip a piece of steel weighing between 200 and 300 pounds, he experienced low-back pain and left-lower-extremity sciatica. Claimant underwent conservative treatment for his complaints, including physical therapy, medication, and steroid injections, but had continued pain. Claimant indicated that the pain was 10/10 with severe pain in the left buttock radiating down the left leg. Claimant

had an MRI scan and then underwent a spinal fusion in August 2016. Post operatively, claimant underwent physical therapy. Although claimant improved somewhat, he continued to experience low-back pain that was aggravated by activity. Dr. Bernstein's diagnosis was status post anterior lumbar spinal fusion at L5-S1. Dr. Bernstein opined that claimant could perform work in a light-duty capacity with a 20-pound lifting restriction and that he could pursue unrestricted physical therapy to increase his functional ability and transition to a work-conditioning or work-hardening program. Based on the history claimant provided, Dr. Bernstein initially opined that claimant had aggravated a preexisting degenerative condition of the low back as a result of his work injury, necessitating his treatment and surgery.

¶ 22    Dr. Bernstein testified that claimant did not tell him that he was initially diagnosed with a hernia. Subsequent to the examination, Dr. Bernstein received additional medical records pertaining to claimant's treatment from Dr. Salimath. Dr. Bernstein testified that of significance in the records was that claimant's complaints were related to the abdominal and groin regions and he had no complaints of low back or radicular pain. Based on the additional medical records, Dr. Bernstein opined that claimant did not suffer a low-back injury as a result of his work-related accident. Dr. Bernstein was asked to assume that claimant had hernia surgery on July 2, 2015, which revealed no hernia and that subsequent to that procedure, he reported low-back pain to his treating physicians. Dr. Bernstein testified that this indicates that claimant developed back pain following his abdominal surgery and not as a consequence of an injury on the job. Dr. Bernstein also noted that the records indicate that claimant had a prior history of back complaints and diagnostic films taken shortly after the accident indicate a history of chronic low back pain, not an acute injury to the low back. Dr. Bernstein did not believe that the initial complaints of hernia-like

symptomology would have masked any low-back pain. Finally, Dr. Bernstein opined that claimant's back surgery was not necessitated by the accident of May 12, 2015.

¶ 23    On cross-examination, Dr. Bernstein acknowledged he did not have a complete set of claimant's medical records and was therefore unable to review the histories that claimant related to those providers. He agreed that because there was a history issue, it would be important to review the medical records at or around the time of the accident for causation. Dr. Bernstein agreed that claimant did not mention a hernia to him. He did not recall if he asked claimant about a hernia, but he referred to a hernia scar so there was probably some discussion. Dr. Bernstein agreed that if claimant did have radicular symptoms or low-back pain starting right after the accident, it would be one of the factors that would allow him to causally connect the low-back condition to the accident. He agreed that just based on the hernia doctor's opinion, he changed his causal connection opinion. He acknowledged that the hernia doctor may not have referenced the low back because he was not treating that area. He added, however, that he would expect a doctor to describe "kind of a global condition" of someone if they had other dominating complaints.

¶ 24    Based on the foregoing evidence, the arbitrator concluded that claimant failed to prove that he sustained an accident that arose out of and in the course of his employment with respondent on May 12, 2015. In support of this conclusion, the arbitrator initially found that claimant was not a credible witness "as he did not appear to be candid and forthcoming in his testimony at arbitration." The arbitrator explained:

> "While [claimant] easily answered questions on direct examination from his counsel, on cross examination [claimant] was unable to remember a number of things, including whether or not he told Dr. Bernstein that he did not have any prior back problems;

whether or not he was involved in a motor vehicle accident in 2006; whether or not he went to Dr. Johnson in 2011 with complaints of back pain; whether or not he was in an altercation with his neighbor; and, perhaps, most significantly ***, whether or not in 2010 he plead [*sic*] guilty to a theft charge. This, when coupled with some of the types of positions that [claimant] (a self-described union painter) applied for during his self-directed job search as contained in [claimant's] Exhibit 12 (*e.g.*, CEO, Controller, Court Advocate, Pilot, Meteorologist, News Anchor and Psychologist, among others) cause the Arbitrator to place no evidentiary weight on his testimony."

In addition, the arbitrator found "numerous inconsistencies" in the testimonial and medical evidence. For instance, the arbitrator noted that while claimant testified that he sought medical treatment the day after the accident, Young testified that he and claimant drove to work together and claimant continued to work for several days. The arbitrator also noted that the interpretive report of the lumbar X ray taken on May 13, 2015, indicated that claimant's chief complaint was left hip pain that radiated to the groin for the last week, but no trauma. Further, the record dated May 20, 2015, from UnityPoint Health noted that claimant's complaints related to lower abdominal pain and burning in the left thigh with an onset date a few days earlier. At that time, claimant told "rooming staff" that he had lifted some metal and noticed swelling, but denied that this occurred at work. It was only after claimant was diagnosed with a hernia and notified that a surgical consultation had been scheduled, that claimant mentioned that he injured himself at work. The arbitrator also noted that the interpretive report for the May 29, 2015, MRI of the lumbosacral spine stated that it was indicated because of chronic low backache, pain in the left upper inner thigh since May 12, 2015, and advanced degenerative changes noted on the spinal radiograph.

¶ 25 Thereafter, claimant sought timely review with the Commission. The Commission unanimously affirmed and adopted the decision of the arbitrator. Claimant then sought judicial review in the circuit court of Peoria County. Following a hearing, the circuit court confirmed the decision of the Commission. This appeal by claimant ensued.

¶ 26                                     II. ANALYSIS

¶ 27 On appeal, claimant challenges the Commission's finding that he failed to prove that he sustained a compensable accident on May 12, 2015. The purpose of the Act is to protect an employee from any risk or hazard which is peculiar to the nature of the work he or she is employed to do. *Hosteny v. Illinois Workers' Compensation Comm'n*, 397 Ill. App. 3d 665, 674 (2009). Thus, to be compensable under the Act, an employee must establish by a preponderance of the evidence both that his or her injury "arose out of" and "in the course of" employment. *Litchfield Healthcare Center v. Industrial Comm'n*, 349 Ill. App. 3d 486, 489 (2004).

¶ 28 The phrase "in the course of" refers to the time, place, and circumstances of the injury. *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 162 (2000). Accidental injuries sustained on an employer's premises within a reasonable time before and after work are generally deemed to arise in the course of one's employment. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 57 (1989). For an injury to "arise out of" one's employment, its origin must be in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. *Caterpillar Tractor Co.*, 129 Ill. 2d at 58. An employee need prove only that some act or phase of his or her employment was a causative factor in the ensuing injury. *Vogel v. Industrial Comm'n*, 354 Ill. App. 3d 780, 786 (2005). In other words, a work-related injury need not be the sole or principal

cause in the resulting condition of ill-being as long as it was *a* causative factor. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 205 (2003).

¶ 29    Whether an employee has suffered a work-related accident is a question of fact for the Commission to determine. *Bolingbrook Police Department v. Illinois Workers' Compensation Comm'n*, 2015 IL App (3d) 130869WC, ¶ 38; *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 449 (1995). With respect to factual matters, it is within the province of the Commission to judge the credibility of the witnesses, resolve conflicts in the evidence, assign weight to be accorded the evidence, and draw reasonable inferences therefrom. *Hosteny*, 397 Ill. App. 3d at 674. As such, we will not overturn the Commission's decision on a factual matter unless it is against the manifest weight of the evidence. *Mlynarczyk v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120411WC, ¶ 15. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Freeman United Coal Mining Co. v. Illinois Workers' Compensation Comm'n*, 2013 IL App (5th) 120564WC, ¶ 21. The appropriate test is whether there is sufficient evidence in the record to support the Commission's finding, not whether this court may have reached the same conclusion. *Metropolitan Water District of Greater Chicago v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 1010, 1013 (2011).

¶ 30    Applying the foregoing standards, we cannot say that the Commission's decision that claimant failed to prove that he sustained a work-related accident on May 12, 2015, was against the manifest weight of the evidence. The Commission, affirming and adopting the decision of the arbitrator, specifically found that claimant was not a credible witness for various reasons. In this regard, the Commission found that while claimant easily answered questions on direct examination from his attorney, he was evasive on cross-examination by respondent's attorney. The record

supports this finding. On direct examination, claimant provided detailed testimony regarding his medical history, including descriptions of accidents, dates and particulars of treatment, and what medical personnel told him. In contrast, on cross-examination, claimant could not even remember speaking with Dr. Bernstein, the independent medical examiner. In addition, claimant was unable to recall whether he was involved in a motor-vehicle accident in 2006, whether he treated for complaints of back pain in 2011, whether he received L5-S1 facet injections in 2012, and whether he pleaded guilty to a charge of theft in 2010. Further, the Commission questioned claimant's credibility based on the types of positions for which he applied during his job search. As the Commission intimated, claimant applied for many jobs that appeared to be outside the scope of his qualifications as a union painter, including pilot, news anchor, meteorologist, and psychologist. Claimant does not dispute this finding on appeal.

¶ 31    The Commission also cited inconsistencies in the testimonial and medical evidence. For example, while claimant testified that he sought medical treatment for his work injury the day after the accident, Young testified that he and claimant drove to work together and claimant continued to work for several days. Indeed, the record reflects that although claimant underwent some X rays the day after the accident, he did not receive any medical care related to the purported accident. The interpretive reports of the diagnostic films taken on May 13, 2015, indicated that claimant's chief complaint was left hip pain that radiated to the groin for the last week, but no trauma. Further, the record dated May 20, 2015, from UnityPoint Health noted that claimant's complaints related to lower abdominal pain and burning in the left thigh with an onset date a few days earlier. At that time, claimant stated that he had lifted some metal and noticed swelling, but denied that this occurred at work. Indeed, it was only after claimant was diagnosed with a hernia and notified a

surgical consultation had been scheduled, that claimant indicated that he injured himself at work. As noted above, assessing credibility is primarily a matter for the Commission. *Hosteny*, 397 Ill. App. 3d at 674. Based on the record before us, the Commission could reasonably conclude that claimant was not credible and that he failed to prove that the injuries for which he sought benefits arose out of and in the course of his employment with respondent.

¶ 32    Nevertheless, claimant argues that an opposite conclusion is clearly apparent. Claimant asserts that Dr. O'Leary was aware of the inconsistencies cited by the Commission, but still found causation. Thus, claimant reasons, the Commission should have also found that his condition of ill-being was causally connected to the May 12, 2015, accident. But this ignores the Commission's finding that claimant was not a credible witness. It also ignores Dr. Bernstein's contrary opinion as to causation. We reiterate that with respect to factual matters, it is within the province of the Commission to judge the credibility of the witnesses, resolve conflicts in the evidence, assign weight to be accorded the evidence, and draw reasonable inferences therefrom. *Hosteny*, 397 Ill. App. 3d at 674. Given the Commission's credibility determination coupled with the inconsistencies in the testimonial and medical evidence and the conflicting medical opinions, we perceive nothing here that would render the Commission's decision contrary to the manifest weight of the evidence.

¶ 33    Claimant also notes that the Commission found him not to be credible, based in part on respondent's inquiry regarding whether he pleaded guilty to a charge of theft in 2010. Claimant argues that this line of inquiry should not have been allowed because (1) respondent did not tender a certified copy of his alleged conviction, (2) respondent did not lay a proper foundation for the conviction, and (3) the Commission did not engage in a "balancing of interest" pursuant to Illinois

Rule of Evidence 403 (eff. Jan. 1, 2011) prior to admitting the evidence. When respondent inquired about the theft charge, claimant objected solely on relevancy grounds. An objection to evidence based upon a specific ground results in the forfeiture of the objection on all grounds not specified or relied on. *Town of Cicero v. Industrial Comm'n*, 404 Ill. 487, 495 (1949); *Barreto v. City of Waukegan*, 133 Ill. App. 3d 119, 130 (1985). Thus, by failing to object on the grounds claimant now cites, he has forfeited his objection to this evidence. Forfeiture aside, we note that it was not whether claimant pleaded guilty to theft in 2010 that the Commission found significant in assessing claimant's credibility, but rather his *inability to remember* whether he pleaded guilty to the theft charge. In any event, this was but one of many reasons the Commission found claimant lacked credibility. Given the record as a whole, we cannot say that this factor alone rendered a conclusion opposite the Commission clearly apparent. See *Greaney v. Industrial Comm'n*, 358 Ill. App. 3d 1002, 1013 (2005) (noting that when erroneously admitted evidence is cumulative and does not otherwise prejudice the objecting party, its admission is harmless).

¶ 34                                     III.  CONCLUSION

¶ 35    For the reasons set forth above, we affirm the judgment of the circuit court of Peoria County, which confirmed the decision of the Commission denying claimant's application for workers' compensation benefits.

¶ 36    Affirmed.